James A. WHITLEDGE, Plaintiff-
Respondent,

v.

ANDERSON AIR ACTIVITIES, Inc.,
Defendant-Appellant.

No. 44315.

Supreme Court of Missouri.

Division No. 1.

Feb. 14, 1955.

Motion for Rehearing or to Transfer
to Court en Banc Denied
March 14, 1955.

Riddle & Baker, Malden, McHaney & McHaney, Kennett, for appellant.

Dalton, Treasure & Dalton, John M. Dalton, Harold B. Treasure, John Hall Dalton, Kennett, for respondent.

VAN OSDOL, Commissioner.

This is an appeal by Anderson Air Activities, Inc., defendant, from an order overruling defendant's motion to set aside a default judgment for $9,000 in plaintiff's action for personal injuries.

Our primary question is whether the trial court, in overruling defendant-appellant's

motion, was acting within its sound judicial discretion.

The action was originally instituted May 11, 1953, against one Harry Raymond Gourley as sole defendant. Plaintiff, James A. Whitledge, alleged his injuries, sustained April 26, 1953, were due to the negligent conduct of defendant Gourley in the operation of a motor vehicle. Defendant Gourley filed an answer denying certain allegations of the petition, and alleging plaintiff's contributory negligence and the "sole cause" negligence of one Pardon.

October 10, 1953, plaintiff filed his first amended petition adding defendant-appellant, Anderson Air Activities, Inc. (hereinafter sometimes referred to as "Anderson"), as an additional party defendant. The same specific negligence was alleged as in the original petition, and it was also alleged that defendant Gourley was, at the time and place of plaintiff's injury, acting as the agent and employee of Anderson. Summons was issued, and served on Anderson, November 14, 1953.

January 21, 1954, Anderson was in default. On that day, plaintiff dismissed (without prejudice) his action as against defendant Gourley. The trial court heard evidence introduced by plaintiff, and entered judgment for plaintiff and against defendant Anderson for $9,000 as stated.

January 30, 1954, defendant-appellant Anderson filed motions denominated "Motion to Set Aside Judgment" and "Amended Motion to Set Aside Judgment and Order New Trial"; and on February 1, 1954, defendant filed "Motion to Set Aside Judgment and Dismiss", "Second Amended Motion to Set Aside Judgment", and "Second Amended Motion for New Trial."

February 20, 1954, evidence was introduced in support of Anderson's "Motion to Set Aside Judgment and Dismiss", "Second Amended Motion to Set Aside Judgment" and "Second Amended Motion for New Trial." The pertinent paragraphs of these motions were to the effect that the trial court was without jurisdiction of the person of defendant Anderson in that plaintiff's amended petition was filed and Anderson

added as a party defendant without order of court; that defendant Anderson had a good defense to the plaintiff's claim; that defendant Anderson was without negligence in being in default; and that plaintiff would not be prejudiced by an order setting aside the judgment. Defendant Anderson moved the court "to set aside the judgment * * * and to grant defendant leave to file an answer herein, and that said cause may be set for trial upon the merits."

March 8, 1954, the trial court by order overruled defendant Anderson's after-trial motions, in which order the trial court found facts, among others, as follows,

"1. Defendant was duly served with summons herein on November 14th, 1953, but did not answer or file any pleading prior to January 21st, 1954, on which date a judgment was rendered for the plaintiff. * * *

"4. Defendant has a defense to plaintiff's claim which would justify the submission of the evidence to a jury upon a trial. * * *

"7. Neither plaintiff nor plaintiff's attorneys agreed to a continuance of this case to the February Term, 1954. * * *

"11. Defendant is guilty of negligence and inexcusable neglect in failing to appear or plead in this case prior to January 21st, 1954."

At the outset we are confronted with plaintiff-respondent's motion to amend the transcript to include defendant Anderson's "Motion to Set Aside Judgment", and "Amended Motion to Set Aside Judgment and Order New Trial", the plaintiff's purpose being to demonstrate that defendant Anderson had not in these original motions limited its appearance, or reserved or asserted that the trial court "had no jurisdiction of the person" of defendant Anderson. The motion to amend the transcript is sustained. Although the original but abandoned motions were not formally admitted into evidence, plaintiff offered them in evidence; defendant-appellant made no objection; and the trial judge

indicated formal admission into evidence was unnecessary inasmuch as the motions were "part of the files in the case." At another time during the hearing the trial judge announced, " * * * the Court will take judicial notice of all the files." It seems that the trial court considered the former motions as if they were introduced into evidence.

■ The original appearance of defendant Anderson by motion to set aside the judgment and by the amended motion to set aside judgment and for a new trial on the merits, and without limiting the appearance, or reserving in these motions the stated jurisdictional question, was a waiver of the particular jurisdictional issue. Brown v. British Dominions General Ins. Co., Limited, of London, England, Mo. App., 228 S.W. 883; Currey v. Trinity Zinc, Lead & Smelting Co., 157 Mo.App. 423, 139 S.W. 212; 6 C.J.S., Appearances, § 20, pp. 60–62.

■ The action of a trial court in sustaining or overruling a motion to set aside a default judgment is generally within the trial court's sound judicial discretion. The discretion to be exercised is not a capricious or arbitrary one, but is to be guided and controlled in its exercise by fixed legal principles. It has been generally held that, in order to justify a trial court in setting aside a default judgment, a defendant must have shown that he has a meritorious defense, and that he has good reason or excuse for the default; and, when a trial court has overruled a motion to set aside a default judgment and the trial court's action is reviewed, the trial court's action will not be disturbed unless the elements of reasonable excuse and meritorious defense are so clearly apparent that it is manifest the refusal to set aside was arbitrary. The possible injustice to plaintiff because of delay is to be also considered. Yet, it has been said that an appellate court is less apt to interfere when a judgment is set aside than when it is not. This is because, when the judgment is set aside, the case is reopened and justice will yet be done by a trial on the merits. The general rule is that, where the application or motion to set aside discloses a meritorious defense, and reasonable diligence or excuse for default is shown, and no substantial injury to plaintiff will result from delay, a trial court should exercise its discretion in favor of a trial on the merits. It is also thought there are no certain rules which will fit any and all cases—the facts and circumstances of each case should be taken into account in deciding whether a defaulting defendant has shown the diligence a reasonably prudent person would have exercised in the circumstances. Barry v. Johnson, 3 Mo. 372; Tucker v. St. Louis Life Ins. Co., 63 Mo. 588; Robyn v. Chronicle Pub. Co., 127 Mo. 385, 30 S.W. 130; Harkness v. Jarvis, 182 Mo. 231, 81 S.W. 446; Hall v. McConey, 152 Mo.App. 1, 132 S.W. 618; Parks v. Coyne, 156 Mo.App. 379, 137 S.W. 335; Hartle v. Hartle, Mo.App., 184 S.W.2d 786; Huffman v. Meriwether, Mo.App., 201 S. W.2d 469.

■ It is the general rule that negligence of counsel in permitting a default judgment is imputable to the client. Casper v. Lee, 362 Mo. 927, 245 S.W.2d 132. But even though negligence of counsel is imputable, it does not necessarily follow that the rule is applicable to a case where defendant has retained or employed counsel, and counsel abandons the defense of the case without notice to his client-defendant; nor does it necessarily follow that the rule is applicable to a case where the client had justifiably relied on another to arrange for and attend to the defense of the case. Lewis v. Van Hooser, 206 Mo.App. 618, 227 S.W. 618; Parks v. Coyne, supra; Hall v. McConey, supra; Barto v. Sioux City Electric Co., 119 Iowa 179, 93 N.W. 268; Newton v. De Armond, 60 Cal.App. 231, 212 P. 630; Craddock v. Sunshine Bus Lines, Inc., 134 Tex. 388, 133 S.W.2d 124; Id., Tex.Civ.App., 112 S.W.2d 248; Annotations, 114 A.L.R. 279 and 126 A.L.R. 369; 49 C.J.S., Judgments, § 280, p. 500, at page 503.

■ Upon the hearing of Anderson's motions, there was substantial evidence introduced tending to show that, when plain-

tiff was injured, Gourley was not acting within the course of his employment with defendant Anderson. There was also evidence that plaintiff's injuries were solely due to the conduct of Pardon. (Now see again the 4th paragraph of the trial court's findings of fact, supra.) And during the hearing, defendant-appellant Anderson's counsel expressed Anderson's good faith, and stated to the trial court, "At this time defendant Anderson Air Activities would like to state we are prepared to try the case without any further delay to the plaintiff at any time you set down. Which includes tomorrow." They had filed their original motions for Anderson on the very day they learned the judgment had been entered.

We shall now review the evidence tending to support and to refute the issues of defendant Anderson's reasonable excuse for failing to plead.

In this case, plaintiff-respondent was and is represented by the law firm of Dalton, Treasure and Dalton of Kennett; and the original defendant Gourley was represented by the law firm of Riddle and Baker of Malden. Riddle and Baker were also the regularly employed counsel of defendant-appellant Anderson. However, Riddle and Baker did not file an answer or otherwise plead for Anderson. When Anderson, having been added as a party defendant, was served with process, one of its officers telephoned Mr. Riddle of the firm of Riddle and Baker. Mr. Riddle testified that he advised Anderson's officer to notify Anderson's insurance carriers and "talked with him at a later date to determine if he had done that." In this manner, Mr. John D. Henson of the law firm of Henson and Henson of Poplar Bluff was notified of the pending action. Continuing, Mr. Riddle testified, "Shortly after that, within a matter of a week, John Henson of Henson and Henson called me and said there was some question as to whether or not there was coverage in this case. I asked him to determine definitely and let me know at the earliest possible date. Shortly after that, but sometime in December and within the thirty day period, Mr.

Henson came to my office and advised us that there was coverage by one of the companies involved, and that they would handle the filing of the necessary answers to protect the company." Mr. Riddle did not learn that a default judgment had been rendered until nine days after its rendition.

Mr. Riddle was also in receipt of a letter, from Mr. Treasure of the firm of Dalton, Treasure and Dalton, dated November 16th, as follows,

"Some time ago I filed an amended petition with the court in connection with the above matter and I thought that the summons had been issued and the sheriff directed to serve same. I checked yesterday with the clerk and found that this had not been done and in view of the fact that we do not have service on the additional defendant, *it will be necessary to continue the case on the 10th.* (Our italics.)

"I would appreciate hearing from you in connection with this matter at your early convenience. If you have any other propositions in connection with the matter, you might submit them, and we will see if the matter can be worked out."

To this letter Mr. Riddle replied on November 17th as follows,

"We have your letter of November 16th, wherein you suggest that the above styled case (the instant case) *should be continued and taken off of the December 10th setting.* This is agreeable with us, and we are letting a copy of this letter go to Judge Goodman so that he will have some advance information in the handling of his jury. (Our italics.)

"We will be glad to meet with you and discuss again the possibilities of settlement. If you have any suggestions as to the time and place, please advise."

Later, by letter of December 8th, Mr. Treasure wrote Mr. Riddle as follows,

"Pursuant to our negotiation in Jefferson City regarding the above matter

and at which time you offered $1,000.00 to settle the case, I have contacted our client with reference to the matter. They are unwilling to accept the $1,000, but in order to get the matter worked out, they would be willing to accept a total sum of $1,500.00. Even this figure would not make them whole as far as their expenses are concerned when the attorney fee is taken out * *."

(In this connection, it seems that Mr. Riddle had undertaken to confer with Anderson with the purpose of getting a contribution of some amount to the end of settling the case. We are unable to say whether or not these negotiations had failed on January 21st.)

But we must note that these letters and these negotiations were with Mr. Riddle as counsel for the original defendant Gourley; and while it seems clear that Mr. Treasure had not before advised, and did not advise Mr. Riddle on January 21st, that a default judgment was to be taken on that date; yet it must also be noted that plaintiff dismissed his action against Mr. Riddle's client Gourley, the original defendant in the case, and took a default judgment against Anderson. Plaintiff had the legal right to do this, Anderson being in default.

Mr. Baker of the firm of Riddle and Baker testified he also had a conversation with Mr. Henson. "At the time of our conversation he told me that he would go into the legal aspects of the case and write me, and we could agree on a proper method of handling Anderson's aspect of the case. * * * His (Henson's) firm was to" file the pleadings in behalf of Anderson.

Mr. John D. Henson testified by deposition that he "represented two of the carriers, insurance carriers at Anderson Air Activities" prior to January 21, 1954. He had been notified of the pending action and had "picked up" the pleadings at the office of Riddle and Baker at Malden. He had a conference with Mr. Treasure, counsel for plaintiff, on January 11, 1954, in which he (Henson) sought an agreement to file a pleading after "the thirty day limit." He was then of the opinion one of his clients

had coverage, but this had not been confirmed by his client, insurance carrier. Mr. Treasure told him there was no objection to the filing of a pleading on or before January 21st "if it developed that one of my (Henson's) clients had coverage." Mr. Treasure told Mr. Henson that if he was going to file any pleading he (Treasure) would like for him to file it by the 21st, and if not he (Treasure) "would want to take the case up at that time." Mr. Henson refused to answer the questions as to what advice he had given his client or clients relating to the extension date, and as to whether his client had told him to file a pleading in the case. These refusals, he said, were "on the basis that it is confidential communication."

Mr. J. Michael Mulloy, Jr., attorney and claims examiner for Associated Aviation Underwriters, a group of sixty-four insurance companies, testified that "one of our member companies" insured Anderson. Henson and Henson were employed in connection with the policy. The witness said Henson and Henson were "our claims investigators and claim adjusters"; they were employed "on a case basis"; they were not authorized to appear in court for Anderson. At the time of the hearing on Anderson's after-trial motions, Underwriters "had not determined as yet whether we had coverage. * * * I know December 1st, 1953, we were of the opinion we had other coverage for this accident, and we sent a wire to Henson and Henson to that effect. We told Henson and Henson to contact Anderson's insurance advisers in Minneapolis, Minnesota, that there was other coverage for this accident; that we did not have it." The witness further testified that Mr. Henson telephoned the office of Underwriters January 18th and the witness telephoned Mr. Henson January 20th. Upon objection by plaintiff's counsel, testimony of the "understanding" between the witness and Henson with regard to "no default being taken in this case" was excluded by the trial court. However, the witness said, "Well, we couldn't file answer without determining coverage. By filing answer (without a non-waiver agreement) we would admit coverage."

Did defendant-appellant Anderson have a reasonable excuse for failing to timely plead?

The trial court was of the opinion there was no agreement to continue the case to the "February Term." (See the 7th paragraph of the findings of fact quoted supra.) If such was the agreement, it was between plaintiff's counsel and Riddle and Baker as counsel for defendant Gourley. But assuming there was no express agreement to continue the case to the "February Term", yet the language we have italicized in the quoted letters of November 16th and 17th was lawyer's language harking of the days before the Civil Code of Missouri but yet reasonably susceptible of a construction that the case was to lose its setting and was to be continued for the term, at least unless reset by court order, or by agreement of counsel (approved by the court), during the term. We have hereinbefore noted there apparently were some negotiations for the settlement of the case. These matters, in themselves, did not justify Anderson's failure to plead. The letters of November 16th and 17th and the negotiations for settlement are of significance only in that they might make a party concerned less attentive to an imminence of a settling of the pleadings. As Mr. Riddle said, "Because it (the case) was taken off setting, there was no particular need for filing a responsive pleading at that time * * *."

Of course, Riddle and Baker *were* defendant-appellant Anderson, as regards the question of Anderson's reasonable excuse for being in default. This is because Anderson acted through Riddle and Baker in arranging for the insurance carrier to conduct Anderson's defense in the case.

We have noted the uncontradicted testimony of Mr. Riddle that Mr. Henson had said to him that Mr. Henson's client, an insurance carrier, had "coverage", and that they, Henson and Henson, would file the necessary answers to protect the company. This, and Mr. Henson's conversation with Mr. Baker, could have been and no doubt was (and, we think, reasonably) understood by Riddle and Baker as a commitment by the insurance carrier to appropriately plead for Anderson. It could be said that Riddle and Baker, at that very time, were justified in concluding the insurance carrier through its counsel had undertaken Anderson's defense. As Mr. Baker said, and we believe he was justified, in the circumstances, in saying he was relying "on Mr. Henson to file pleadings." It may be that Mr. Henson misconceived the scope of his authority as counsel for his client, or later was directed by his client not to, and did not plead. Assuming either of these hypotheses as true, there is no evidence in the transcript that Riddle and Baker knew or were notified that the insurance carrier was not going to plead and defend. There is no indication other than good faith of Riddle and Baker, either as to the original and continued intention of Anderson to defend the action, or as to their reliance on the insurance carrier's apparent commitment, by its attorney, to file a pleading in Anderson's behalf. It has been urged they should have filed answer and made an independent investigation to determine whether Mr. Henson's client, or clients, had Anderson's coverage, and were negligent in failing so to do. But as we have seen, according to Mr. Riddle's undisputed testimony, they had been definitely advised by counsel, apparently authorized by an insurance carrier, that the insurance carrier had coverage and that its counsel would plead.

We believe plaintiff-respondent is mistaken in asserting defendant's evidence showed that Anderson's "insurance advisers in Minneapolis" were advised on December 1st that Underwriters had no coverage. The testimony was, as we have quoted supra, that Mulloy "told Henson and Henson to contact Anderson's insurance advisers in Minneapolis." According to Mr. Henson's testimony, he was of the opinion even as late as January 11th that one of his clients had coverage. We have found no evidence in the record indicating that Mr. Riddle or Mr. Baker had any information of any uncertainty of coverage after Mr. Riddle's conversation with

Mr. Henson in which conversation Mr. Henson had advised him "there was coverage by one of the companies involved", and that they (Henson and Henson) would file the necessary pleadings in the case.

In our opinion the trial court, in the particular circumstances of this case, should have exercised its discretion in favor of a trial on the merits.

The order overruling defendant's motions to set aside the default judgment and for a trial on the merits should be reversed, and the cause remanded.

It is so ordered.

LOZIER and COIL, CC., concur.

PER CURIAM.

The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court.

WESTHUES, HYDE and HOL-LINGSWORTH, JJ., concur.

DALTON, P. J., not sitting.