**Nellie M. HUGHES, Respondent,**

v.

**Herman CHRISTIAN, and J. D. Williams, d/b/a Consolidated Cabs, and Consolidated Cabs, Inc., Appellants.**

**No. KCD 30123.**

Missouri Court of Appeals, Western District.

Sept. 4, 1979.

---

Alan R. Browne, Ennis, Browne & Jensen, Kansas City, for appellants.

Gregory O. Grounds, Jones, McDaniel & Frankum, Kansas City, for respondent.

Before SHANGLER, P. J., SWOFFORD, C. J., and WASSERSTROM, J.

SWOFFORD, Chief Judge.

The source of this appeal is an action for personal injuries sustained by the respon-

dent (plaintiff) as a result of a rear end collision with a Consolidated Taxicab which was then being driven by appellant (defendant) Christian. The collision occurred on September 6, 1977 when the plaintiff, southbound on Broadway, had stopped the automobile she was driving at the intersection of 5th and Broadway in Kansas City, Missouri in response to a red traffic signal and was waiting for the westbound traffic on 5th to clear so she could make a right-hand turn to pursue a course to the west. While so stopped, her vehicle was struck in the rear by the Consolidated cab, also southbound on Broadway. Suit was filed December 12, 1977 against Christian and J. D. Williams, d/b/a Consolidated Cabs, and Consolidated Cabs, Inc. All three defendants were properly served with summons on December 14 and 16, 1977, but failed to answer, and a default judgment was entered on February 2, 1978 against the defendants in the sum of $10,000.00.

On February 27, 1978, a Motion to Set Aside this judgment was filed on behalf of Christian and Williams, the first sentence of which contains the parenthetical statement "(Defendant Consolidated Cabs, Inc. having taken bankruptcy)". The corporation does not further appear in this record and no appeal was taken on its behalf from the judgment or the court's order overruling the motion to vacate the default, which ruling was designated by the trial court as a final order for purposes of appeal.

The joint motion of Christian and Williams, supported by their affidavits, in summary, admits the service of summons in the case but asserts that the service papers were turned over to an office employee, John Hobbs, whose duty it was to place all such papers with, and to secure the services of, the company's attorneys to defend the suits. At the time, Hobbs had the service papers in two other suits which had been filed against the company. Hobbs did secure the services of that firm in the two cases last referred to, but "through oversight" failed to do so as to the Hughes suit, and the default judgment resulted. The motion and supporting affidavit of Christian states that the defendants have a meri-

torious defense to the Hughes claim due to the sudden, unexpected, unforeseeable rupture of the line carrying the brake fluid on the taxicab and the resulting loss of braking and brake failure immediately before the collision. Further, they assert that they had good reason and excuse for their default due to Hobbs' "inadvertent" oversight in failing to secure the services of counsel and their lack of knowledge of such failure until notice was received of the default judgment.

An evidentiary hearing was conducted on the motion to vacate and Christian and Williams both testified in support of these allegations. As to the mechanical failure of the brakes, the only evidence was that of Christian, who testified that although he had experienced no trouble with the brakes prior to the time in question, they did suddenly go out so that he could not avoid striking the Hughes automobile; that the point of impact was the left front of his taxicab and the right rear of the Hughes automobile; that his speed was 15–20 miles per hour at impact; and, that following the collision, brake fluid was leaking from his car at the left front wheel.

As to the oversight and neglect of Hobbs, the evidence established that Christian gave his service papers to Williams, and Williams stated that he, in turn, gave all of the service papers to Hobbs with the above-mentioned instructions to secure counsel; and all such actions were in conformity with standard company practice. It should be noted that Williams, although in communication with the company's law firm (about other litigation) after service and before judgment in the Hughes case, never made inquiry to ascertain whether the Hughes papers were in their hands for defense and neither Hobbs nor any member of the law firm were called as witnesses at the hearing. What happened to the Hughes papers was never disclosed.

It should be noted that present counsel for appellants were only retained to handle the proceedings to vacate the judgment, and this appeal, and had no connection with

nor responsibility for the litigation prior to that time. Further, this record discloses that the default judgment was not entered in any perfunctory manner but upon a complete record disclosing the nature and extent of plaintiff's injuries to her neck and hand, resulting in extensive medical attention, emergency hospital care and medication, including neck support, and a long period of physical therapy, extreme headaches, pain, discomfort and loss of wages by reason of her inability to work for two months and three weeks. A medical report from her attending physician, Dr. Medlicott, M.D., of the Midwest Orthopedic Clinic, was made a part of the record, as were various medical bills. Her special damages, including loss of wages, exceeded $1600.00.

After receiving the evidence on the motion to vacate, the trial court held that although the defendants had established at least a *prima facie* defense to the Hughes claim, their evidence did not establish a factual situation which showed that they exercised reasonable diligence to avoid or excuse their default under the recognized authorities. The trial court also remarked about the possible injury to the plaintiff, Hughes, which could result from the necessary delay due to the bankruptcy of the corporation involved and dispute over the application of the bond or deposit of the defendants required by Kansas City as a condition for the licensing of taxicabs.

The Court on March 3, 1978, overruled the motion to vacate the judgment. It is to be noted, as did the trial court, that this was within the 30 days after judgment was rendered.

The appellants raise a single point on appeal. They charge the trial court abused its discretion by failing to find that the evidence "that the inadvertent failure by the bookkeeper" to deliver the service papers to the attorneys for defense and "the mistaken belief by the defendants that this had been done", demonstrated reasonable diligence and excuse for default.

There is no substantial dispute (nor, indeed, can there be) as to the general principles of law that control a situation such as presented on this record.

Whether or not a default judgment should be set aside by a trial court rests generally within that court's sound discretion and its determination of that motion will not be set aside unless it appears that there has been an abuse of that discretion. *Whitledge v. Anderson Air Activities*, 276 S.W.2d 114, 116[3] (Mo.1955).

Certain guidelines have been firmly established for the exercise of that discretion and the factors to be considered. Of course, the underlying consideration is that courts generally favor the trial of cases on the merits, but where a defaulting defendant moves to set aside the adverse judgment, the court must consider 1) whether a meritorious defense to the initial cause of action is shown; 2) reasonable diligence or excuse for the default appears; and 3) no substantial injury to plaintiff will result from the delay occasioned. *Whitledge v. Anderson Air Activities*, supra.

The burden of persuasion of these elements is upon the moving party, and as was said in *Whitledge v. Anderson Air Activities*, supra, at l. c. 116[3]:

"* * * It has been generally held that, in order to justify a trial court in setting aside a default judgment, *a defendant must have shown that he has a meritorious defense, and that he has good reason or excuse for the default* ; and, when a trial court has overruled a motion to set aside a default judgment and the trial court's action is reviewed, *the trial court's action will not be disturbed unless the elements of reasonable excuse and meritorious defense are so clearly apparent that it is manifest the refusal to set aside was arbitrary.* The possible injustice to plaintiff because of delay is to be also considered. * * *"  (Emphasis added)

See also: *Williams Energy Co. v. Tracy Truck Leasing, Inc.*, 562 S.W.2d 765, 767[1–3] (Mo.App.1978).

All of the cases dealing with this subject point out that these principles must be applied to and determined upon the particular facts, circumstances and proof adduced in

each case. It is obvious from the record before us in this case that the trial court concluded that the defendants had made a *prima facie* showing of a defense to the Hughes claim, namely, the failure of the braking system on the taxicab. The effect of the delay which would be occasioned by setting aside the judgment and whether or not such would result in substantial injury to the judgment creditor (Hughes) was not stressed in the court below by the parties and, indeed, no evidence was introduced by the movants on that factor.

As in the case of *Ward v. Cook United, Inc.,* 521 S.W.2d 461, 471[12] (Mo.App.1975) the prejudice to the judgment creditor, Hughes, which would result from vacating her judgment, is obvious. She fully pursued her substantive rights and remedies, proved her case, and neither she nor her counsel is charged with any improper conduct. Under such conditions, this Court in *Ward v. Cook,* supra, held that the defendant's claim of no prejudice to the plaintiff is "completely dependent upon a convincing showing of the first two grounds and would not, standing alone, ordinarily justify the exercise of judicial discretion to set aside the default judgment". (l. c. 471). Such rule is applicable here.

The principal focus in this appeal, therefore, rests upon the evidence and law, relating to the Court's conclusion that the defendants failed to make a substantial showing that they had a reasonable excuse for their default and had demonstrated reasonable diligence to prevent the default.

As previously noted, the suit papers in the Hughes case were turned over by defendant Williams to Hobbs, a regular office employee of Consolidated, part of whose duties were to transmit all such suit papers to the counsel for Consolidated for defense. What Hobbs did or did not do with the Hughes papers was not shown. But the fact remains that the Hughes suit was not answered and the default resulted. Only two reasonable conclusions can be reached from this record; either Hobbs lost, misplaced or forgot to perform his duty in regard to them, or he did, in fact, transmit such papers to counsel for defense and counsel neglected to respond on behalf of the defendants. In either event, Hobbs in the first instance and counsel in the second were acting or failing to act in the capacity of agents and alter ego of the defendants, and their neglect was imputable to the defendants.

In *Distefano v. K. C. Southern Railway Co.,* 501 S.W.2d 551 (Mo.App.1973) the suit papers were transmitted to the Assistant General Counsel, a regular employee of the railroad, for evaluation and decision as to whether the railroad would defend the suit on behalf of an employee charged with negligence in the case. Having concluded that such defense would be accorded the employee, the papers were transmitted to the chief clerk in the office for forwarding to the railroad's local counsel for defense. This employee placed them in a drawer, forgot about them, and a default judgment resulted.

In an attempt to set aside the default, the defendants in the case argued that good cause for setting aside the judgment had been shown by their justifiable reliance upon a "third party" to engage counsel to defend, which the "third party" failed to do. In response to this argument, this court stated (l. c. 553[2]):

"* * * The house counsel and chief clerk of the appellants were not third parties, however, but their agents and alter ego with whose lack of diligence and ordinary prudence appellants are chargeable. * * *"

This Court concluded in *Distefano* that (l. c. 553[3]):

"Appellants have failed to show good cause. Their default was the result of neither misadventure nor mistake, but of an unmitigated negligence. * * *"

This ruling was followed in *Ward v. Cook United, Inc.,* 521 S.W.2d 461 (Mo.App.1975) where suit papers were timely transmitted by the defendant to its insurance carrier in order to secure defense of the case. The Claims Manager, agent and attorney reviewed the paper, but through "inadvertent error in routing" they were mingled with

the work assignments of a claims adjuster and a default judgment resulted. The court stated, l. c. 472[14]:

"Such facts, without more, clearly establish a lack of diligence and ordinary prudence on the part of Harlan (the Claims Manager, agent and attorney), a responsible official of Zurich (the insurance carrier) * * *" (material in parenthesis added)

It was held in *Ward* that the acts of Harlan did not constitute good cause for the default but constituted "inexcusable neglect" within the applicable rule, and that the trial court properly refused to vacate the default.

If the second permissible conclusion is considered, namely, that Hobbs did in fact timely transmit the Hughes suit papers to the company's regular counsel, then the defendants have not met their burden of proof that such counsel had "reasonable excuse" for the default or exercised "reasonable diligence" in the defense. It is the general rule in Missouri that the neglect of a lawyer resulting in a default judgment is imputable to his client. *Whitledge v. Anderson Air Activities*, supra (l. c. 116[4]); *Ward v. Cook United, Inc.*, supra (l. c. 472[15]) and cases cited therein.

The conclusion is inevitable, upon this record, that whether the neglect resulting in the default was that of Hobbs, the office employee, or of company counsel, such neglect was imputable to the defendants and there was a complete failure of proof that it was excusable. Each of the authorities cited and relied upon by the appellants have been carefully reviewed and none are at war with the general principles herein stated. Those that reach different results are clearly distinguishable upon the facts in those cases (such as *Whitledge*, as discussed in *Ward*) and are not controlling here. The governing principles of law must be applied to the facts and circumstances of each case. When this is done in the case now before this Court, it is concluded that no abuse of discretion by the trial court appears and the motion to vacate the judgment was properly overruled.

Accordingly, the judgment below is affirmed and the judgment entered in the original proceeding in favor of respondent and against appellants on February 2, 1978 remains in full force and effect as of the date of its entry.

All concur.