**Harvey A. FRIEDMAN and Dorismae Friedman, Plaintiffs–Respondents,**

v.

**The CARING GROUP, INC., and Martin Plotkin, Defendants–Appellants.**

No. 53066.

Missouri Court of Appeals,
Eastern District,
Division Three.

March 15, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 15, 1988.

Application to Transfer Denied June 14, 1988.

Thomas C. DeVoto, St. Louis, for defendants-appellants.

Wilbur L. Tomlinson, St. Louis, for plaintiffs-respondents.

SMITH, Judge.

Defendants, Caring Group Inc. and Martin Plotkin, appeal from the order of the trial court denying their motions to set aside default judgments against them.

Plaintiffs filed their petition against defendants on May 23, 1986, seeking recovery of the unpaid principal and interest on a promissory note executed by Caring Group. The note was personally guaranteed by Plotkin, plaintiff's former son-in-law, and his ex-wife. The ex-wife was not joined as a party. Caring Group was served on June 3, 1986. Summons directed to Plotkin was returned unexecuted. Caring Group retained attorney Joseph Devereaux to represent both defendants. On July 3, 1986, he entered his appearance for Caring Group only and requested thirty additional days to plead which was granted. On August 11, 1986, Plotkin was served with an alias summons. No entry of appearance on his behalf was filed and no motion or pleading on behalf of either defendant was filed prior to the default judgment. On October 27, 1986, a default and inquiry was granted and again on November 7, 1986, default and inquiry was granted against each defendant and a trial date of January 12, 1987 was set. On January 12, 1987, judgments against both defendants in the amount of $80,400 principal and interest and $5668 attorney's fees were entered.

No notice of the default and inquiries or of the judgment was sent by counsel or the clerk to defendants or Devereaux. Defendants became aware of the judgment when Devereaux received a cost bill on February 23, 1987. On that same day, another law firm entered its appearance for defendants. On February 24 that entry was amended to reflect appearance as co-counsel. Also on February 23 a notice of appeal was filed. That appeal was dismissed by this court on March 9, 1987.

On February 26 the Caring Group filed five motions, to wit: (1) for leave to file responsive pleadings out of time, (2) to set aside default judgment pursuant to Rule 74.78, (3) to set aside judgment pursuant to Rule 52.04, (4) to set aside judgment pursuant to Rule 74.32, and (5) to set aside judgment "in the nature of an application for writ of coram nobis." Plotkin filed motions to set aside "interlocutory judgment by default" and to set aside the judgment pursuant to Rule 52.04. All motions were denied on April 6 following oral argument. A motion for reconsideration was denied on April 15. This appeal followed.

At the time of the original hearing on the motions, the court had before it the deposition of Mr. Devereaux. That document reflected that after his entry of appearance he had a "couple" of telephone conversations with plaintiffs' counsel. The first conversation was to the effect that it was not necessary to serve Plotkin. Upon the request that an answer be filed, Devereaux indicated a responsive pleading would be filed. A "month or so" thereafter, and after service on Plotkin, counsel had anoth-

er conversation at which plaintiffs' counsel requested an "answer or other responsive pleading be filed" and Devereaux indicated that would be done. Upon questioning at the deposition for the specifics of meritorious defenses or counterclaims referred to in the Motions, Devereaux invoked the attorney-client privilege.

In an affidavit filed prior to the hearing on the motion for reconsideration, Devereaux asserted that the other guarantor was an indispensable party and that he dictated a motion to dismiss on that basis but that motion was never filed. He also asserted that he talked to the co-guarantor and she indicated she would try to amicably resolve this "family dispute." There is no indication that plaintiffs or their attorney were advised of this settlement effort. Devereaux was never advised by plaintiffs' counsel that plaintiffs would obtain a default judgment without notice if a responsive pleading was not filed.[1]

In *Sprung v. Negwer Materials, Inc.,* 727 S.W.2d 883 (Mo. banc 1987) six methods to set aside a final judgment were identified, i.e., (1) a separate suit in equity, (2) a petition for review under Rule 74.12, (3) a nunc pro tunc order, (4) a motion in the nature of a writ of coram nobis, (5) a motion under Rule 74.32 and (6) a motion to set aside for fraud. 1.c. 885. Defendant Caring Group relies here on (4)(5) and (6) and indirectly on (1). It also relies on Rule 74.78. Plotkin relies solely on the contention that upon setting aside the default against Caring Group, his judgment will become interlocutory and should then be set aside under Rule 74.05.

*Sprung, supra,* [2], articulates the policy considerations involved when an effort is made to set aside a default judgment as a balancing of the competing goals of efficiency, finality and justice. When a trial court denies a motion to set aside a default judgment such an action is within its discretionary authority and will not be overturned unless arbitrary or capricious. *Rattner v. Nations,* 737 S.W.2d 490 (Mo.

App.1987) [2]; *Whitledge v. Anderson Air Activities,* 276 S.W.2d 114 (Mo.1955) [3]. But as has been frequently stated, appellate courts view with greater favor the setting aside of defaults because that action allows determination of the controversy on the merits. *Id.*

■ The thrust of Caring Group's theory under 74.78 is that the failure of the clerk to give notice as prescribed by that Rule authorizes setting aside of the default judgment. Rule 74.78 provides:

"Upon the entry of an order or judgment, the clerk shall serve a notice of the entry by mail in the manner provided in Rule 43.01 upon every party affected thereby who is not in default *for failure to appear* and who was not present in court in person or by attorney at the time of the entry of such order of (sic) judgment. If such notice is not given, said order or judgment shall be set aside for good cause shown upon written motion filed within 6 months from the entry of the order or judgment." (Emphasis supplied).

The relief allowed under 74.78 is not for an "irregularity" referred to in 74.32, but is a specifically recognized failure in procedure carrying its own period of limitation. It is, in fact, a seventh method to set aside a final judgment not identified in *Sprung.*

The parties have joined issue on whether notice here was required because Caring Group was in default. Plaintiffs point to the language of Rule 43.01 which states that "no service need be made on parties in default...." That rule does not specifically refer to judgments. It deals with the various and frequently numerous papers filed throughout the course of a lawsuit. It is reasonable that notice of such papers should not be required to be served upon parties who are in default. Rule 74.78, on the other hand refers specifically to orders or judgments. Read with Rule 74.05, which limits attacks on interlocutory judg-

---

**1.** Counsel for plaintiffs stated in his brief here that he extended Devereaux every reasonable "professional courtesy." There are members of the bench and bar who can remember when

that phrase would have included advance warning to a dilatory attorney adversary of intent to seek a default and immediate notice that one had been obtained.

ments on default to the period before final judgment is entered, it appears that 74.78 is limited to final orders or judgments affecting the defaulting party. Because of the serious impact that such orders or judgments have on the defaulting party, it is not at all unreasonable that notice be furnished if possible. For that reason we believe the language emphasized above was added to the rule to provide notice to parties who have appeared but are, for some reason other than non-appearance, in default. Caring Group entered its appearance in this case through its attorney and was not therefore "in default for failure to appear." *See Detroit Tool and Engineering Company v. Martin,* 641 S.W.2d 177 (Mo.App.1982) [1–3]; *Colla v. Colla,* 614 S.W.2d 9 (Mo.App.1981) [2]. We therefore find Rule 74.78 applicable to Caring Group.[2]

■ Our inquiry does not end there however. Rule 74.78 requires a showing of good cause for setting aside the judgment. "Good cause" is an amorphous concept but generally is regarded as including both a legitimate excuse for allowing the default to occur and a showing of some prejudice usually established by demonstration of a meritorious defense. *Sprung, supra,* [4, 5]; *Smead v. Granger,* 684 S.W.2d 573 (Mo.App.1984) [2–4]; *Jones v. Chrysler Corporation,* 731 S.W.2d 422 (Mo.App. 1987) [1]. We are unable to find either here. The only basis for the delay in filing a responsive pleading was counsel's belief that the co-guarantor was an indispensable party. The guarantee clearly stated that it was a joint and several obligation and that recourse under it could be sought against either or both guarantors. The co-guarantor was not a necessary or indispensable party in law or fact. Rule 52.04. Even if the co-guarantor should have been joined no valid reason for the failure to join her prior to the granting of the default judgment has been shown. While Caring Group alleges the conclusion that it has

meritorious defenses and the possibility of a counterclaim no defense or counterclaim has ever been identified either in the trial court or here. The conclusory allegation that such exist does not establish that they do. *Detroit Tool and Engineering Company v. Martin, supra,* [4–6]. We are unable to conclude on the record before us that the requisite showing of good cause has been made. As a result we have no basis for finding an arbitrary or capricious abuse of the trial court's discretion.

■ Caring Group has blended together its claim for relief under coram nobis, 74.32 and extrinsic fraud. A writ of coram nobis is not a writ of right. Its granting or denial is within the court's discretion. It lies for errors of fact which would make the judgment erroneous and if known by the court would have prevented rendition of the judgment. The writ does not lie to grant relief from a result caused by the negligence of the party seeking the relief. *Owens v. Vesely,* 620 S.W.2d 430 (Mo.App. 1981) [2–7]. In asserting the coram nobis position, the concept of extrinsic fraud and Rule 74.32 Caring Group appears to rely upon the language of the judgment reciting that defendants "come not." It is contended that the judgment would not have been entered if plaintiffs had advised the court of Mr. Devereaux' entry of appearance. Mr. Devereaux' entry was a matter of record in the trial court's file. It is difficult to conclude that plaintiffs concealed something which was a part of the file. The record does not reflect errors of fact, fraud, or "irregularity" to support relief under any of these theories.

■ Nor do we find any basis for error in the trial court's refusal to grant equitable relief. *Sprung v. Negwer Materials, supra.* "Equity requires that the defendant show a meritorious defense, good reason or excuse for the default and that no injustice will accrue to the plaintiff as a result of the delay occasioned by setting

**2.** We apparently reached a contrary opinion in *Courtin v. McGraw Construction Co.,* 639 S.W.2d 286 (Mo.App.1982) and in *Weber v. Hoesch,* 603 S.W.2d 60 (Mo.App.1980). The former case does not mention 74.78 or discuss the interplay between it and 43.01. The latter case includes an obvious misreading of the rule and contains no discussion of its purpose. We decline to follow either case.

aside the judgment." *Id.* [4, 5]. The *Sprung* case, decided the day before the hearing for reconsideration, was called to the court's attention. The record at the reconsideration hearing does not establish the above delineated grounds for equitable relief, as we have previously discussed.[3]

Plotkin's appeal is premised solely on the appeal of Caring Group being successful. It is not and Plotkin's appeal falls with it.

The order of the trial court denying defendants' motions to set aside the default judgment is affirmed.

KAROHL and KELLY, JJ., concur.

3. Caring Group urges us to apply the more liberal rules for setting aside defaults found in Rule 74 effective January 1, 1988. But the more liberal provisions of Rules 74.03 and 74.05, even if applicable here which they are not, require a greater showing by a defendant than has been made here.