**Letha THOMPSON and Crystal Thacker, Plaintiffs/Respondents,**

v.

**COLUMBIA MUTUAL INSURANCE COMPANY, Defendant/Appellant.**

No. 17389.

Missouri Court of Appeals,
Southern District,
Division Two.

Nov. 6, 1991.

Motion for Rehearing or to Transfer to Supreme Court Denied Nov. 27, 1991.

Application to Transfer Denied
Jan. 28, 1992.

James R. Reynolds, Kennett, for defendant/appellant.

John T. McMullan, Kennett, for plaintiffs/respondents.

MONTGOMERY, Judge.

Letha Thompson and Crystal Thacker (plaintiffs) commenced an action against Edwin L. Aumon (Aumon) based on his negligence as their landlord in regard to a fire in plaintiffs' rented mobile home. Plaintiffs took a default judgment against Aumon on December 6, 1988. That judgment awarded damages to plaintiff Thompson for $7,790 and plaintiff Thacker for $2,221 resulting from their property damage.

On December 28, 1989, plaintiffs filed a garnishment action against Columbia Mutual Insurance Company (Columbia). The answer of Columbia asked the court to set aside the default judgment of December 6, 1988, because it was obtained by fraud and misrepresentation. Columbia further alleged Aumon failed to notify them of the existence of the original lawsuit thereby breaching policy provisions. The parties submitted the case upon a stipulation of facts along with deposition testimony of Aumon, Kim Lee, and Steven D. Wenger. The trial court entered judgment in favor of plaintiffs in the amount of their original judgment against Aumon, together with interest from December 6, 1988. Columbia appeals.

We recite each point presented for our determination.

Point One:

The court erred in not setting aside the default Judgments (Counts I and II) because same were obtained in such a manner and in such a time sequence as to constitute the type of fraud upon the Court contemplated by the relief available under Rule 74.06(d). Specifically, *the defaults were entered at a time when plaintiffs-respondents' attorney knew of the clearly expressed, but justifiably mistaken belief and misapprehension of his adversary, the insurance company claim representative, Steve Wenger, that no suit had been filed.* (Emphasis added.)

Point Two:

The Court erred in finding that the insured, Ed Aumon, had not violated the cooperation clause of the policy for the reason that the insured did not deliver the suit papers he was served with to the insurance company.

Our review is governed by Rule 73.01(c), Missouri Rules of Civil Procedure (1991), as construed by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). The decree of the trial court will be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Id.* at 32. Neither party requested findings of fact or conclusions of law, and the trial court made none. In that circumstance, all fact issues are considered as having been resolved in accordance with the result reached. Rule 73.01(a)(2).

Columbia issued a policy of liability insurance to Aumon which was in full force on January 3, 1987. Aumon purchased the insurance through the Ferrell–Gibbins Agency in Caruthersville, Missouri. For ease of understanding numerous time sequences, the following facts are set forth in chronological order:

January 3, 1987 A fire occurred in the mobile home owned by Aumon and occupied by plaintiffs.

April 4, 1987 By this date, Aumon had received two letters from James Turnbow, attorney for plaintiffs, requesting damages for his clients resulting from the fire. Aumon delivered both letters to Kim Lee, employee of Ferrell–Gibbins Agency. She sent copies of both letters to Columbia. Receipt of each letter is not denied.

June 3, 1987 Columbia adjuster, Ray Harris, had investigated the claim of plaintiffs. He wrote to Turnbow and emphatically denied the claim.

October 18, 1988 Suit was filed by Turnbow for plaintiffs in two counts in the Circuit Court of Pemiscot County. The case was given Case No. CV388–282CC. Simultaneously, plaintiffs filed a set of interrogatories. Both the petition and interrogatories were file stamped by the circuit clerk, October 18, 1988.

October 26, 1988  Aumon was personally served by Deputy Sheriff Kim Hall. In his deposition Aumon was asked if he remembered being served. He replied, "She could have; I don't recollect that she did serve me, but she could have." Aumon forcefully testified he took everything he received either from Turnbow or the process server to the Ferrell–Gibbins Agency in Caruthersville. He handed all "papers" to Kim Lee, employee of said agency.

November 9, 1988  Kim Lee sent a memo to Columbia stating, "He [Aumon] got these papers in from a lawyer concerning this loss. We were afraid he should not fill them out. Please look over the papers and if we need to do anything, please let us know."

November 14, 1988  Steven D. Wenger, Claims Supervisor for Columbia, testified he received an "unfiled petition" and a set of interrogatories attached to the memo of November 9, 1988, from Kim Lee. Wenger concluded that the petition was unfiled because it did not show a case number, no summons was attached, and it was not file stamped by the Circuit Clerk of Pemiscot County.

December 1, 1988  Wenger dictated a letter to Attorney Turnbow. He did nothing more to fortify his conclusion that the petition was unfiled.

December 5, 1988  Wenger mailed the following letter to Turnbow which we set forth verbatim:

December 5, 1988

James Turnbow, Attorney At Law

P.O. Box 544

Hayti, MO 63851

RE: INSURED: Ed Aumon

DATE OF LOSS: 1-3-87

Dear Mr. Turnbow:

The petition and interrogatories that you sent to Mr. Ed Aumon regarding a fire loss that occurred to his mobilehome and which was apparently occupied by your client had been sent to me for review.

Our investigation of the fire claim revealed no negligence on the part of our insured. Additionally I note that the petition has not been filed in Pemiscot County Circuit Court and therefore I am not going to act on the interrogatories which you sent to Mr. Aumon and I would suggest that he likewise ignore them.

If you and your clients insist on pursuing this case by in fact filing this frivolous lawsuit I will certainly consider filing a counterclaim for damages resulting from the time and expenses of defending the frivolous lawsuit.

Our file remains closed.

Steven D. Wenger, Claims Supervisor

COLUMBIA MUTUAL INSURANCE COMPANY

SDW: sd

Date of dictation: 12-1-88

cc: Ed Aumon

December 6, 1988  Plaintiffs appeared with Turnbow in the Circuit Court of Pemiscot County and obtained a default judgment against Aumon. At this time, Turnbow had no knowledge of any attorney representing Aumon and certainly no pleadings had been filed on his behalf. Between October 18, 1988, and December 6, 1988, the docket sheet has only one entry (10–27-88) which reflects "Return of service filed. Deft. served on October 26, 1988."

December 7, 1988  Turnbow received Wenger's letter of December 5, 1988. Prior to this date Turnbow had no contact with Wenger concerning plaintiffs' claim. Turnbow did not respond to the letter.

December 28, 1989  Plaintiffs filed their garnishment action against Columbia.

Columbia's first point argues for relief under Rule 74.06(d) because the default judgment was obtained in such a manner so as to constitute fraud upon the court. We fail to find any evidence of fraud at the time plaintiffs obtained their judgment by default. Aumon was properly served with process and over thirty days passed with no pleadings filed by Aumon. On Decem-

ber 6, 1988, neither plaintiffs nor their attorney were aware of Wenger's ill-fated decision to conclude plaintiffs' petition was "unfiled." Up to that date plaintiffs properly proceeded under the rules.

Rule 74.06(b)(2) allows the court to relieve a party from a final judgment for fraud (whether intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party. Rule 74.06(c) requires that a motion under Rule 74.06(b)(2) be filed not more than one year after the judgment was entered. Columbia did not learn of plaintiffs' default judgment until over one year later. For this reason, Columbia looks to relief under the more liberal time limitation of Rule 74.06(d) which provides, in part:

> This Rule 74.06 does not limit the power of the court to entertain an independent action to relieve a party from a judgment or order or to set aside a judgment for fraud upon the court.... and the procedure for obtaining any relief from a judgment shall be by motion as prescribed in these Rules or by an independent action.

■ Even though Columbia did not file an independent suit in equity for relief, we choose to treat the allegations in its answer as such. *Sprung v. Negwer Materials, Inc.*, 727 S.W.2d 883 (Mo. banc 1987), (*Sprung I*) held that a trial court has jurisdiction to treat a defendant's motion to set aside a default judgment on equitable grounds as an independent suit in equity, provided the motion sufficiently pleads grounds for equitable relief. Columbia's answer invokes sufficient grounds for equitable relief.

Our court in *Hamm v. Hamm*, 437 S.W.2d 449 (Mo.App.1969), succinctly describes grounds for equitable relief as follows:

> Equity will relieve against a judgment for extrinsic fraud, accident and mistake [citation omitted], and where a defendant is denied the occasion to present a meritorious defense by reason of accident, mistake, inadvertence, mischance or unavoidable circumstances *unmixed with neglect or inattention*, a court of equity will vacate a default judgment and give

the injured party an opportunity to present his defense to the trier of the facts.

*Id.* at 453.

■ To convict the trial court of error in this case we must conclude that (a) extrinsic fraud, accident or mistake occurred and (b) the actions (or inactions) of Wenger were unmixed with neglect or inattention. We cannot reach that conclusion.

■ According to Wenger's testimony, he was a claims supervisor for ten years with Columbia. His job required supervision of field adjusters and their files. He stated he had dealt with lawsuits and attorneys for thirteen years. He has a high school education with four years of college. From no source was Wenger ever advised the petition received by him on November 14, 1988, was unfiled. He reached that assumption only because the petition lacked a case number, no summons was attached, and lacked a stamp of the circuit clerk. He stated that aggressive plaintiff's attorneys often send unfiled pleadings to influence settlement. Yet, the petition was received by Wenger from the office of Columbia's agent. The agent's cover memo clearly stated their insured "got these papers in from a lawyer concerning this loss." Perhaps Wenger could conclude an aggressive lawyer sent the "papers" to Aumon to influence settlement. In our view a more logical conclusion is that Aumon received the "papers" from a lawyer via the Sheriff of Pemiscot County. Wenger had almost three weeks after receipt of the petition to verify whether it was unfiled by a simple telephone call to the circuit clerk's office. We believe a prudent claims supervisor with the experience of Wenger would have done at least that much under the circumstances.

■ Because we determine the actions of Columbia were tainted with neglect and inattention it is unnecessary to fully discuss the type of fraud which must be shown. However, *McKarnin v. McKarnin*, 795 S.W.2d 436, 439 (Mo.App.1990), teaches that an action in equity to vacate a judgment can only be based on extrinsic

fraud and not on intrinsic fraud. For the distinction between extrinsic and intrinsic fraud the court relied on *May Dept. Stores Co. v. Adworks, Inc.,* 740 S.W.2d 383, 385[3] (Mo.App.1987), where the court followed the Restatement (Second) of Judgment, Sec. 70, Comment C. (1982), in its definition of extrinsic and intrinsic fraud. The court held:

'Extrinsic' fraud means 'fraud that induced a party to default or to consent to judgment against him.' ... 'Intrinsic' fraud means 'knowing use of perjured testimony or otherwise fabricated evidence.'

We find no evidence of any fraud of plaintiffs that induced Aumon or Columbia to default or consent to the judgment of December 6, 1988. On that day Turnbow had no knowledge that Wenger mistakenly concluded the petition was unfiled. See *Sprung v. Negwer Materials, Inc.,* 775 S.W.2d 97 (Mo. banc 1989), (*Sprung II*) where our Supreme Court held that defendant was not entitled to relief from a default judgment where failure to file pleadings was the result of mishandling of documents, and possible neglect and inattention by defendant's law firm and insurer. There defendant's pleadings were never received by plaintiff's attorney or filed with the trial court. The pleadings were apparently sent to defendant's insurance company. Plaintiff took a default judgment after the time for pleading expired. The facts of the present case are analogous.

We are mindful of the complaint of Columbia concerning the conduct of Turnbow after December 6, 1988. Clearly, Turnbow had full knowledge on December 7, 1988, that Wenger labored under a false impression that plaintiffs' petition was unfiled. Turnbow knew plaintiffs had a default judgment which was unknown to Wenger. From that point forward Turnbow "sandbagged" Columbia by his silence. It was candidly admitted in argument before us that Turnbow waited over one year to file the garnishment action so the judgment would be more difficult to overturn.

In *Sprung II, supra,* appellant claimed the failure of respondent's attorney to advise appellant's attorney that a default judgment had been entered until after its entry provided a basis for setting aside the judgment. Our Supreme Court answered that argument by holding:

In rejecting a contention that a plaintiff should notify a defaulting defendant after obtaining an interlocutory judgment of default, this Court in *Barney v. Suggs,* 688 S.W.2d [356] at 359–60 [ (Mo.1985) ] stated:

The procedure plaintiff utilized followed our rules, the statutes, and decisional law....

\* \* \* \* \* \*

... [D]efendant was personally served with summons and petition and was put on notice of every stage of the proceeding (citations omitted).

\* \* \* \* \* \*

Defendant negligently disregarded legal process. Once he was validly served he was charged with notice and in court for all subsequent proceedings. Plaintiff proceeded properly under the rules. Defendant ignored them. If judgments are properly rendered they should not be disturbed by loose interpretations of cases and newly created and imposed rules. Dereliction by a defendant should not be so rewarded. No additional notice was required under the law.

In *Friedman v. The Caring Group, Inc.,* 750 S.W.2d 102, 103–04 (Mo.App. 1988), the issue of the conduct of a plaintiff's attorney as to the entry of a default judgment was squarely before the appellate court. The court refused to hold that the failure of plaintiff's attorney to notify defendant's attorney, who had entered his appearance in the case but not filed an answer, that plaintiff's attorney intended to take a default judgment provided a basis for setting aside the judgment. In the present case, respondent's attorney did not know that appellant was represented by an attorney until after the default judgment was entered. The Court concludes plaintiff's attorney had no duty to inform the de-

fendant or its attorney that a judgment had been entered.

775 S.W.2d at 101.

Here, plaintiffs, through Turnbow, followed the procedure allowed by our rules, the statutes, and decisional law. Aumon was personally served with summons and petition. No answer was filed because of the mistaken decision of Wenger. Plaintiffs took a default judgment. At that time, Turnbow did not know whether Aumon was represented by an attorney and certainly did not know of Wenger's dilemma. *Sprung II* requires us to conclude Turnbow had no duty to inform Aumon or Wenger that a judgment had been entered.

■ Columbia invites us to rule in accord with the scholarly dissent of Chief Justice Blackmar in *Sprung II*. We do not have that option. An opinion of the Supreme Court on a proposition of law controls all subordinate tribunals. Mo. Const. Art. V, § 2 (1945). *Sprung II* was a majority opinion of our Supreme Court which controls our decision. Point one is denied.

■ Columbia's second point lacks merit. Substantial evidence supports the trial court determination that Aumon did not violate the cooperation clause of Columbia's policy. Well within the time to plead, Columbia had in its possession a copy of the petition served on Aumon. Any confusion by Wenger cannot be construed as lack of cooperation on the part of Aumon. The cases cited by Columbia simply are not in point with the facts of this case.

Judgment affirmed.

SHRUM, P.J., concurs.

MAUS, J., dissents and files dissenting opinion.

MAUS, Judge, dissenting.

I must dissent. While *Sprung II* involves standards for the practice of law, I do not believe it mandates the outcome of this case. *Sprung II* did not deal with the issue of extrinsic fraud in obtaining a default judgment. *Sprung II* declined to set aside a default judgment because defense counsel's failure to file a responsive pleading was not "excusable neglect."

This case presents an issue of whether or not the conduct of plaintiffs' counsel which resulted in the default judgment was extrinsic fraud. As noted in the majority opinion, " ' "Extrinsic" fraud means "fraud that induced a party to default...." ' " Fraud need not be an affirmative misrepresentation. It is silence where there is a duty to speak. *Curtis v. Kays,* 670 S.W.2d 887 (Mo.App.1984). Plaintiffs' counsel received the letter of Wenger stating

> "... Additionally I note that the petition has not been filed in Pemiscot County Circuit Court and therefore I am not going to act on the interrogatories which you sent to Mr. Aumon and I would suggest that he likewise ignore them...."

In considering whether or not this placed a duty upon plaintiffs' counsel to speak, the dissenting opinion of Chief Justice Blackmar in *Sprung II* is required reading. That dissent includes the following.

> "I accept the proposition that a lawyer has a duty to advance his client's interest by all honorable means, and would reject any suggestion that 'professional courtesy' should prevail over the lawyer's duty to his client. I would like to be remembered as a lawyer who went all out for his clients. But I would stop short of taking advantage of a mistake known to me. Nor would I sanction a situation in which the Court permits other lawyers to get away with conduct which I consider the legal equivalent of fraud. *See Columbian National Life Insurance Co. v. Black,* 35 F.2d 571, 574 (10th Cir.1929). This Court, in the last analysis, sets the standards which Missouri lawyers must observe. It should not allow this plaintiff and his attorney to profit from *deceptive conduct or deceptive silence.*" *Sprung v. Negwer Materials, Inc.,* 775 S.W.2d at 110 (*Sprung II*). (Emphasis added.)

This standard imposed a duty upon plaintiffs' counsel to speak.

Plaintiffs' counsel upon reading Wenger's letter could only form the conclusion

that Wenger did not act because of counsel's silence. He evidenced this conclusion by admitting he "sandbagged" the appellant by waiting for more than a year before instituting this garnishment action.

I would reverse the judgment of the trial court and set aside the default judgment.