**Irma JONES and Ray Jones, Plaintiffs-Respondents,**

v.

**CHRYSLER CORPORATION, a Delaware corporation, Defendant-Appellant.**

No. 14597.

Missouri Court of Appeals, Southern District, Division Two.

April 30, 1987.

Motion for Rehearing or to Transfer Denied May 21, 1987.

Application to Transfer Denied July 14, 1987.

Donald R. Duncan, Turner, Reid, Duncan, Loomer & Patton, P.C., Springfield, for defendant-appellant.

Stephen R. Soutee, Soutee & Soutee, Marionville, Jerry L. Reynolds, Larry B. Moore, Jerry L. Reynolds and Associates, P.C., Springfield, for plaintiffs-respondents.

FLANIGAN, Judge.

Plaintiffs Irma Jones and Ray Jones brought this action against defendant Chrysler Corporation for losses allegedly sustained by reason of a fire which occurred on December 15, 1983, near Mt. Vernon. The fire caused extensive damage to a house owned by plaintiff Irma Jones and to the house's contents owned by the respective plaintiffs. The petition alleged that the fire was caused by a defect in a Dodge automobile manufactured by Chrysler.

The suit papers were served upon Chrysler on October 10, 1985. On November 13, 1985, the case was assigned by the presiding judge to Associate Circuit Judge Jack P. Steinle. On that date, Chrysler having failed to appear, an evidentiary hearing was held at which both plaintiffs testified with respect to the occurrence and their respective damages. Stephen R. Soutee, one of the two attorneys representing plaintiffs, was also present. On that date the court entered a judgment by default in favor of the plaintiffs and against defendant Chrysler and awarded $130,500 to plaintiff Irma Jones and $30,000 to plaintiff Ray Jones.

On December 10, 1985, Chrysler filed its "Motion to Vacate Judgment and for Leave to File Responsive Pleadings." Also on December 10 an evidentiary hearing was held on Chrysler's motion and both sides presented evidence. On December 12, 1985, the trial court denied Chrysler's motion. On December 20, 1985, Chrysler filed its notice of appeal from the default judgment and from the order denying Chrysler's motion to vacate that judgment.

Chrysler's first point is that the trial court erred in denying its motion to vacate the judgment because:

(a) Chrysler established that it had a good excuse for failure to file a timely answer, that it had a meritorious defense and that plaintiffs would not be unduly prejudiced if the judgment were set aside;

(b) Procedural errors appear on the face of the record in that the default hearing took place before Judge Steinle before the order assigning the case to Judge Steinle was filed and at a time when jurisdiction of the case was still vested in the circuit judge;

(c) The clerk failed to give notice to Chrysler, under Rule 74.78, that a judgment had been entered and Chrysler showed, within six months from the date of the judgment, good cause as to why it should be set aside.

The following are the significant events:

October 3, 1985—Petition filed.

October 10—Suit papers served on defendant Chrysler Corporation.

October 17—Supervision of suit assigned to Robert Maples, claims supervisor in Chrysler's claim department.

October 21—Maples has telephone conversation with Jerry Reynolds, one of the two attorneys representing plaintiffs. Maples dictates a letter to Turner, Reid & Duncan, Chrysler's defense attorneys in Springfield, assigning defense of suit.

November 13—Presiding Judge Pinnell signs order assigning case to Associate Circuit Judge Jack P. Steinle. Plaintiffs and their attorney Soutee appear, present evidence on damages, court enters default judgment awarding $130,500 to plaintiff Irma Jones and $30,000 to plaintiff Ray Jones.

November 14—Judge Pinnell's order of November 13 filed.

December 10—Chrysler files motion to vacate judgment. Evidentiary hearing held on motion; both sides offer evidence.

December 12—Judge Steinle enters order denying Chrysler's motion to vacate.

December 20—Chrysler files notice of appeal.

At the December 10 hearing, Chrysler presented the testimony of Robert Maples, claims supervisor in Chrysler's claim department, to whom the case had been assigned.

Maples testified, in substance: On October 21 I had a telephone conversation with Jerry Reynolds, one of the two attorneys representing plaintiffs. Reynolds told me that a portion of the damages had been paid by Farm Bureau Insurance Company but that the losses exceeded the insurance. Reynolds told me that the owner of the car had alternator problems and shortly before the fire a new alternator had been installed in Hayes, Kansas. With regard to whether I had an agreement with Reynolds to extend the time for pleading 30 days beyond the 30-day deadline, "I am not sure I asked him for it."

Maples further testified: Also on October 21 I wrote a memorandum to my secretary to set up a file on the lawsuit and to send a memorandum to Chrysler engineer Tracy requesting information concerning the specific automobile. I dictated a letter to the Springfield law firm of Turner, Reid & Duncan, assigning that firm the defense of the case. Although the secretary sent the memorandum to Tracy, the letter to defense firm was not typed or mailed until November 19, 1985. The file was apparently pushed aside because of the air bag litigation and the letter to the law firm just did not get typed. On November 11, November 13 and November 16 I received service information, warranty records, and a recall notice pertaining to the automobile. The service records on this vehicle showed that the alternator was repaired twice by a dealer in Lawrence County, Missouri.

Maples further testified: On November 26 attorney Kenneth Reid of the Springfield law firm telephoned me and informed me that my letter (dictated October 21) was received by Reid on November 26, and that Reid had checked with the circuit clerk that day and was informed that the default judgment had been entered.

Attorney Jerry Reynolds, testifying for the plaintiffs, stated: In the Maples-Reynolds conversation of October 21 Reynolds told Maples that he, Reynolds, represented the interest of Farm Bureau; that his co-counsel, Soutee, represented the individual interests of the plaintiffs, who were substantially underinsured; and that Farm Bureau had paid the plaintiffs $80,000.

Reynolds also testified: Maples was not sure "where Mt. Vernon was or where Springfield was," and I told Maples that Turner, Reid and Duncan did his defense work in this area. Maples looked at his defense counsel manual and said I was right and that he would send the file to that firm.

Reynolds also said: "Maples and I had no conversation about extending the deadline for Chrysler to file pleadings. There was no reason to discuss anything about an extension. We talked about my interest and Soutee's interest in the case. I did not attempt to make any agreement on Soutee's behalf, and there was no such agreement.

"Kenneth Reid told me in a telephone conversation on November 26 that he had received the file from Chrysler and that he had learned that a judgment had been taken. On the same day I received a call from Maples and Maples asked me whether or not we had an agreement for an extension of time and I told Maples we had no such agreement."

Chrysler does not claim that it did not have a full opportunity to present all available evidence concerning the circumstances underlying its failing to file a timely pleading and permitting the matter to be in default at the time of the entry of the default judgment on November 13. From the foregoing testimony the trial court could, and apparently did, reach the conclusion that there was no agreement between plaintiffs and Chrysler for Chrysler's pleading deadline to be extended beyond the standard "thirty days after the service of the summons and petition upon [Chrysler]," Rule 55.25(a);[1] that Maples' letter, dictated October 21, was not typed and mailed until November 19 and was not received by the Turner firm until November 26; that the delay in the typing and mailing of the letter was due to mishandling on the part of the Chrysler claim department; that neither plaintiffs nor their attorneys played any role in the mishandling.

The action of a trial court in sustaining or overruling a motion to set aside a default judgment is generally within the trial court's sound judicial discretion. *Whitledge v. Anderson Air Activities, Inc.*, 276 S.W.2d 114, 116[3] (Mo.1955); *Lambert Brothers, Inc. v. Tri City Construction Co.*, 514 S.W.2d 838, 841 (Mo.App.1974); *Ward v. Cook United, Inc.*, 521 S.W.2d 461, 470[10] (Mo.App.1975). The discretion to be exercised is not a capricious or arbitrary one, but is to be guided and controlled in its exercise by fixed legal principles. *Whitledge v. Anderson Air Activities, Inc.*, supra.

■ Defendant Chrysler, as the party seeking to set aside the default judgment,

had the burden of proving: (1) it had a good excuse for being in default, (2) it had a meritorious defense to the action, and (3) plaintiffs would not be substantially harmed by the delay resulting from the default being set aside. *Sullenger v. Cooke Sales & Service Co.*, 646 S.W.2d 85, 89 (Mo. banc 1983).

Where the default is due to mishandling of the suit papers by defendant's legal department, *Distefano v. Kansas City Southern Railway Co.*, 501 S.W.2d 551 (Mo.App.1973); *Hughes v. Christian*, 586 S.W.2d 788 (Mo.App.1979); *Sullenger v. Cooke Sales & Service Co.*, supra, the individual defendant himself, *Harriman v. Household Finance Corp.*, 608 S.W.2d 117 (Mo.App.1980), the defendant's insurer, *Ward v. Cook United, Inc.*, supra; *Luce v. Anglin*, 535 S.W.2d 504 (Mo.App.1976), or defendant's branch office, *Human Development Corp., Etc. v. Wefel,* 527 S.W.2d 652 (Mo.App.1975); *M.S. Conway Const. Co. v. Prudential Ins. Co.*, 682 S.W.2d 56 (Mo.App.1984), the appellate court has affirmed the order of the trial court which denied relief to the defaulting defendant.

In *Luce v. Anglin,* supra, the plaintiff took a default judgment against a defendant who was personally served with process and was insured by Allstate Insurance Company. Before the lawsuit was filed, plaintiff's attorney had had correspondence with an Allstate employee. The latter testified, in support of defendant's motion to set aside the judgment, that after service was obtained, he and plaintiff's attorney made an agreement that the defendant would have an indefinite extension of time in which to file a pleading. The plaintiff's attorney denied having any such conversation. The trial court overruled defendant's motion to set aside the judgment and the court of appeals affirmed that ruling.

■ It is appropriate to note the type of mishandling involved in the foregoing cases and the description which the appellate court ascribed to the mishandling: (1) *Distefano.* Clerk in defendant's legal de-

---

**1.** All references to rules are to Missouri Rules of Court, V.A.M.R., and all references to statutes are to RSMo 1986, V.A.M.S.

partment placed suit papers in file drawer and forgot them—default was a result of "neither misadventure or mistake but unmitigated negligence." (2) *Hughes.* Suit papers turned over to office employee of defendant cab company who failed to deliver them to the company's attorneys—inexcusable neglect. (3) *Sullenger.* Cook, president of corporate defendant, gave suit papers to a salesman employed by defendant; both Cook and the employee "simply forgot or neglected to pursue the matter" —no reasonable excuse for the default. (4) *Harriman.* Suit papers served on defendant's wife who lost them; defendant claimed he called circuit clerk and was told he would receive further advice and need not appear—defendant's conduct not "untainted with neglect or inattention on his part." (5) *Ward.* Defendant corporation insured by Zurich Insurance Company; Zurich sent suit papers to adjuster instead of defense counsel; "unmitigated negligence." (6) *Human Development Corporation.* Suit papers served at branch office of corporate defendant, which failed to notify main office—inattention or neglect. (7) *M.S. Conway Const. Co.* Chicago regional counsel of defendant insurance company put suit papers in briefcase with intention to leave them with local counsel in Kansas City; forgot to do so—forgetfulness or misrouting of papers within an organization does not constitute good cause for default nor does it show excusable neglect.

■ It is unnecessary to decide whether the foregoing line of cases compelled the trial court to find that Chrysler's mishandling of the suit papers was inexcusable and did not constitute good cause for setting aside the default judgment.[2] It is clear that those cases justified him in doing so and this court will not interfere with that ruling.

In *Barney v. Suggs,* 688 S.W.2d 356 (Mo. banc 1985), the court said, at p. 359:

"When damages are unliquidated, the default procedure has two stages. First, if defendant fails to file a timely pleading plaintiff may obtain an interlocutory judgment of default. Rule 74.045. Second, damages are assessed and a final judgment is entered. Rule 74.09–.11. No time interval between the stages or additional notice is required.

Here, defendant was personally served with summons and petition and was put on notice of every stage of the proceeding. Rule 43.01(a).... Service of a valid summons gives a defendant reasonable notice of the suit and the damage assessment upon default....

Defendant negligently disregarded legal process. Once he was validly served he was charged with notice and in court for all subsequent proceedings. Plaintiff proceeded properly under the rules. Defendant ignored them. If judgments are properly rendered they should not be disturbed by loose interpretation of cases and newly created and imposed rules. Dereliction by a defendant should not be so rewarded. No additional notice was required under the law."

It should be noted that the foregoing cases involve situations where the defendant mishandled the suit papers and the plaintiff was in no way responsible for the mishandling. They also involve situations where the trial court denied relief to the defaulting defendant and the appellate court affirmed.

In *Sprung v. Negwer Materials, Inc.,* 727 S.W.2d 883 (Mo. banc 1987), the Su-

---

**2.** In *Arthur v. Evangelical Deaconess Society, Etc.,* 615 S.W.2d 438 (Mo.App.1981), suit was filed on May 23, service was obtained upon the defendant on June 1 and a default judgment was entered on July 17. On July 18 the defendant filed a motion to set aside the default judgment and on July 21 the trial court *sustained* the motion.

The court of appeals found no abuse of discretion by the trial court in setting aside the default judgment. Before the suit was filed there had been some dealings between plaintiff and defendant and defense counsel. There was "some confusion among defendant's employees as to the significance of the summons when they had already forwarded [prior to May 23] the proposed petition to defendant's insurance carrier." The court of appeals said: "The trial court was warranted in finding that defendant's conduct was not intentionally designed or irresponsibly calculated to impede the work of the court."

preme Court dealt with a situation where the defendant, through its counsel, mishandled the suit papers but the trial court *granted* defendant relief from the default judgment. The Supreme Court reversed and remanded for additional proceedings.

In *Sprung* the corporate defendant was personally served on January 11, 1985, and delivered the suit papers to its insurance company which in turn delivered them to a St. Louis law firm for handling. On January 31, within the 30–day pleading deadline, a lawyer in the defense firm dictated an entry of appearance and a request for extension of time to plead. After those documents were typed, the lawyer's secretary, by mistake, sent the original documents to the insurance company rather than to the circuit clerk. Neither the clerk nor the plaintiff's attorney, one Padberg, ever received a copy of those documents.

On March 11, 1985, the trial court entered a default judgment in the amount of $1,500,000. On April 22, 1985, Padberg informed defendant's counsel that a final judgment had been entered on March 11. On May 3, 1985, the defendant filed two motions to set aside the default judgment.

According to the concurring opinion of Judge Rendlen, "from the record, the only official notice to the plaintiff that defendant was represented by counsel was defendant's answer apparently filed on March 23, 1985, or the discovery motions filed on March 28, 1985, 17 days after final default judgment had been rendered." According to the opinion of Judge Welliver, who concurred in part and dissented in part, "upon learning of [defendant's] attorney's appearance in the proceeding on the 18th day of the 30–day period provided by Rule 75.01, Padberg discussed with his client the [defendant's] appearance in the case and 'the plaintiff specifically instructed [Padberg] not to communicate with the defendant until a final default judgment had been obtained.' "

The trial court, "on equitable grounds," sustained defendant's motion to set aside the default judgment and plaintiff Sprung appealed from that order. Sprung contended that the trial court had no jurisdiction to sustain defendant's motion because the 30 days provided in Rule 75.01 had elapsed since the entry of the default. Rejecting that position, the Supreme Court held that the trial court had jurisdiction to treat defendant's motion as an independent suit in equity, "provided the Motion sufficiently pleaded grounds for equitable relief." The court also stated:

"We have carefully reviewed defendant's Motion to Set Aside Final Judgment of Default on equitable grounds. Defendant avers a meritorious defense, good cause for its failure to answer, and the absence of significant harm to plaintiff if the judgment is set aside. The motion is sufficient to invoke the equitable powers of the court; it may be treated as an independent suit in equity."

The opinion did not state what facts defendant pleaded in its motion which constituted "good cause for its failure to answer." The court then stated:

"If, however, defendant's motion is to be accorded the status of a petition, the proceedings that follow must be consistent with that status. Defendant is required not only to plead its cause, but also to prove it. And plaintiff is entitled to defend his judgment vigorously and to labor to defeat defendant's equitable claims. Thus, plaintiff is entitled to the full panoply of procedures established by our Rules, including the opportunity to join the issues by filing an answer to defendant's motion, to conduct discovery and to present evidence on contested issues at a hearing. We find no evidence in the record that the trial court ever notified plaintiff that it was treating the motion as an independent petition in equity. In failing to conduct itself in accordance with the Rules of Civil Procedure, the trial court erred in setting aside the default judgment entered against defendant March 11, 1985."

The court also stated:

"[W]e do not have before us in this case all the facts necessary to determine whether equitable grounds exist for setting aside the default judgment. Defendant's motion does not aver fraud in

the procurement of the judgment. Instead, defendant claims that its failure to answer resulted from mistake, inadvertence, mischance, or accident. Plaintiff does not concede that defendant's failure to answer proceeded from 'accident, mistake, inadvertence, or unavoidable circumstance *unmixed with neglect or inattention.*' *Hamm v. Hamm,* 437 S.W.2d [449] at 453 [Mo.App.1969] (emphasis in original). Whether defendant had a good cause or excuse for its inattention is a factual matter not fully addressed in the proceedings before the trial court. Further proceedings are required."

The case at bar is procedurally and factually distinguishable from *Sprung.* Here Chrysler's motion was filed within 30 days of the entry of the default judgment and the court ruled upon that motion within the same 30–day period. In *Sprung* the motions were filed 53 days after entry of the default judgment. In *Sprung* the trial court sustained the motion to vacate, but in the case at bar the motion was denied. In *Sprung* plaintiff's counsel Padberg knew, within the 30–day period, that defense counsel was unaware that the default judgment had been entered and, under instruction of the plaintiff so Padberg said, did not apprise defense counsel of the entry. No such facts are here.

It would appear, from the facts that *were* developed in *Sprung,* that there was internal mishandling of the suit papers by the defendant. If the trial court, in *Sprung,* had *denied* relief to the defendant the long line of authorities previously cited would have justified that denial if such mishandling had been the *sole* ground on which defendant based its claim of "good excuse for being in default."

This court concludes that *Sprung* affords no basis for this court to interfere with Judge Steinle's denial of Chrysler's motion. It is unnecessary to consider plaintiffs' alternative contention that Chrysler failed to show a meritorious defense. Ground (a) of Chrysler's first point has no merit.

*Of ground (b),* on November 13, 1985, W.H. Pinnell, presiding judge of the circuit, signed a written order assigning the case to Judge Steinle, an associate circuit judge. On the same day, Judge Steinle held the hearing which culminated in the entry of the default judgment. At the outset of that hearing Judge Steinle stated on the record, "This matter comes on for hearing in Division I, and I am presiding in this case by virtue of an assignment of the presiding judge of that division, Judge William Pinnell." Judge Pinnell's order assigning the case to Judge Steinle was not filed and entered on the docket sheet until the next day, November 14. The entry of the default judgment on the docket sheet was made on November 13.

Chrysler argues that the one-day delay in filing the assignment order constitutes a procedural irregularity which is apparent on the face of the record and that, under Rule 74.32, this irregularity is sufficient to warrant setting aside the default judgment. Chrysler relies to some extent on *In re Marriage of Bruske,* 656 S.W.2d 288 (Mo.App.1983), but that case is distinguishable. The court of appeals, at p. 293 of the *Bruske* opinion, stated that it was limited to cases assigned to an associate circuit judge pursuant to a local rule adopted under § 475.245 and that the opinion did not consider issues of jurisdiction where the transfer was made under § 474.240.2.

At the time of the instant proceedings in the trial court § 478.225.4 read, in pertinent part:

"An associate circuit judge shall not hear and determine cases other than those authorized by subsections 1, 2 and 3 of this section, except that associate circuit judges may hear and determine such cases or classes of cases which are transferred or assigned to them pursuant to section 478.240 ..."

Section 478.240.2 reads, in pertinent part:

"2. Subject to the authority of the supreme court and the chief justice under article V of the constitution, the presiding judge of the circuit ... shall have the authority to assign judges to hear such cases or classes of cases as the

presiding judge may designate, and to assign judges to divisions. Such assignment authority shall include the authority to authorize particular associate circuit judges to hear and determine cases or classes of cases in addition to those authorized in section 478.225."

Section 478.240 grants the presiding judge of the circuit "broad authority to assign associate circuit judges to hear cases or classes of cases other than those either previously heard by magistrate judges or mentioned in § 478.225. This authority is limited only by § 478.240.2(1)–(4) and the rules of this Court. ... Both the Constitution and the statutory scheme enacted thereunder reflect a clear intent to enlarge the role of the associate court division in our unified court scheme beyond that of the now abolished magistrate courts in order to better utilize judicial manpower and to expedite the handling of cases." *City of Kansas City v. Rule*, 673 S.W.2d 21, 24–25 (Mo. banc 1984).

■ It is clear that Judge Pinnell, under § 478.240.2, had the authority to assign this case to Judge Steinle. The record shows that Judge Pinnell signed a written order on November 13 making that assignment. The record further shows that the assignment was made before Judge Steinle commenced the hearing on November 13. There is nothing in § 478.240.2 which specifically requires that the order of assignment be *filed* before the assignment becomes effective. Any holding that such a finding is a prerequisite to the effectiveness of the assignment would be inconsistent with the statutory scheme designed "to better utilize judicial manpower and to expedite the handling of cases." This is especially true in multi-county circuits where a delay between making the assignment and the filing of it might be substantial.

This court holds that the mere fact that the order assigning the case to Judge Steinle was filed one day after it was made, and one day after the hearing of the case by Judge Steinle, did not deprive Judge Steinle of authority to act under the assign-

ment. Ground (b) of Chrysler's first point has no merit.

*Of ground* (*c*) Rule 74.78 reads:

"Upon the entry of an order or judgment, the clerk shall serve a notice of the entry by mail in the manner provided in Rule 43.01 upon every party affected thereby *who is not in default for failure to appear* and who was not present in court in person or by attorney at the time of the entry of such order of judgment. If such notice is not given, said order or judgment shall be set aside for good cause shown upon written motion filed within 6 months from the entry of the order or judgment." (Emphasis added.)

■ Chrysler was "in default for failure to appear," on November 13, the date of entry of the default judgment. Under the plain language of Rule 74.78, Chrysler was not entitled to notice of the entry. Accordingly Chrysler receives no benefit from Rule 74.78. *Arnold v. Arnold*, 684 S.W.2d 451, 452 (Mo.App.1984). Ground (c) of Chrysler's first point has no merit.

Chrysler's second point is that the trial court erred in entering the default judgment because "plaintiffs did not prove damages sufficient for the entry of the judgment." This point, in effect, is an attempt to appeal from the November 13 default judgment itself, as distinguished from an appeal from the order of December 12 denying Chrysler's motion to vacate.

■ "[A] default judgment is not appealable in the absence of a motion to set aside or vacate." *Vonsmith v. Vonsmith*, 666 S.W.2d 424 (Mo. banc 1984). To meet the requirement of the *Vonsmith* rule, the motion to vacate or set aside must be *timely*. *Barney v. Suggs*, 688 S.W.2d 356, 358[2] (Mo. banc 1985). To be timely, the motion must be filed within 15 days after the entry of the judgment. Rule 73.01(a)(3); Rule 81.-05(a); *Chatman v. Civic Center Corp.*, 682 S.W.2d 31, 32 (Mo.App.1984). The *Vonsmith* rule does not apply, however, where the appeal of the party against whom default was entered raises a question of subject matter jurisdiction or of the sufficiency of the petition. *Stewart v. Stewart*, 670

S.W.2d 93 (Mo.App.1984). Neither such question is raised here.

"For the purpose of ascertaining the time within which an appeal may be taken, a judgment becomes final at the expiration of thirty days after the entry of such judgment, if no *timely* motion for a new trial is filed.... In the event a motion for a new trial is timely filed, the judgment becomes final at the expiration of ninety days after the filing of such motion or, if such motion is passed on at an earlier date, then at the date of disposition of said motion." (Emphasis added.) Rule 81.05(a).

■ Chrysler's motion to vacate the default judgment is an "authorized after-trial motion" and is to be treated as a motion for new trial for the purpose of ascertaining the time within which an appeal must be taken. Rule 81.05(a). Chrysler's motion was untimely and it served only as a suggestion to the trial court to exercise the power conferred upon it by Rule 75.01 to vacate the judgment. *Chatman,* supra, 682 S.W.2d at 32. The motion preserved nothing for appellate review. *Aquatics Unlimited v. Treasure Lake Resort,* 719 S.W.2d 117, 120 (Mo.App.1986).

■ The trial court retained control over the judgment during the 30–day period after its entry. Rule 75.01. Chrysler's appeal from the default judgment was timely, however, because it was filed within the period prescribed by Rule 81.04(a), "not later than ten days after the judgment or order appealed from becomes final."

■ Chrysler's motion may be treated as a motion to set aside for irregularity, as authorized by Rule 74.32, *Aquatics Unlimited,* supra, at 120, but such a motion does not put in issue the sufficiency of the evidence. Id. at 121. Chrysler's claim that the evidence was insufficient to justify the damage award is a claim of a judicial, not procedural, error, and it is not subject to review under Rule 74.32. *Barney v. Suggs,* supra, at 359[9].

Although Chrysler's second point has not been preserved for appellate review, Chrysler requests that it be reviewed as a matter of plain error. Chrysler relies upon such cases as *O'Connor v. Quiktrip Corp.,* 671 S.W.2d 17 (Mo.App.1984), and *Bridgeforth v. Proffitt,* 490 S.W.2d 416 (Mo.App.1973), in arguing that the evidence on damages which the plaintiffs adduced at the November 13 hearing was defective. *O'Connor* did involve a default judgment and on appeal the sufficiency of the evidence with respect to damages was reversed. However, the defaulting defendant, in *O'Connor,* had filed a timely motion to vacate. In *Bridgeforth,* which was not a default judgment case, the issue was raised by a timely motion for new trial. Those cases are not apposite here.

■ This court has reviewed the evidence adduced at the November 13 hearing concerning the damages of the respective plaintiffs. No plain error, Rule 84.13(c), appears.

The judgment of November 13, 1985, is affirmed. The order of December 12, 1985, denying defendant-appellant Chrysler's motion to vacate said judgment is affirmed.

PREWITT, P.J., and HOGAN and MAUS, JJ., concur.