Melvin James SPRUNG, Jr.,
Respondent,

v.

NEGWER MATERIALS, INC.,
Appellant.

No. 71368.

Supreme Court of Missouri,
En Banc.

Aug. 1, 1989.

Dissenting Opinion of Justice Blackmar's
Opinion Corrected Sept. 8, 1989.

Rehearing Denied Sept. 8, 1989.

Albert E. Schoenbeck, Brent W. Baldwin,
St. Louis, for appellant.

Charles L. Merz, St. Louis, for respondent.

BILLINGS, Judge.

This is *Sprung II*—a petition in equity to set aside a default judgment after remand by this Court in *Sprung I.* Following an evidentiary hearing the trial court denied relief. The Missouri Court of Appeals, Eastern District, affirmed the order of the lower court but ordered the case transferred to this Court. Affirmed.

The principal opinion of Judge Gary M. Gaertner for the court of appeals, with minor modification, and without quotation marks, is adopted as the opinion of this Court, and is as follows:

Appellant, Negwer Materials, Inc., appeals the order of the trial court overruling appellant's petition in equity to set aside a default judgment for $1,500,000.00 in favor of respondent, Melvin James Sprung, Jr., and against appellant. On appeal appellant raises four issues: (1) The trial court incorrectly declared and applied the law in determining that appellant did not have good reason or excuse for the default[1]; (2) The failure of respondent's attorney to advise appellant's attorney that a default judgment had been entered requires the judgment be set aside; (3) Imputing the conduct of appellant's attorney and insurer to appellant violates due process of law; and (4) Respondent's petition fails to state a cause of action. Finding appellant's contentions to be without merit, the judgment is affirmed.

The evidence reveals respondent filed a petition on December 27, 1984, for damages sustained when a cart, which was rented from the appellant, tipped over and threw drywall on the respondent; appellant received personal service on January 11, 1985. Appellant proceeded to deliver the petition to its insurance company which then delivered it to a law firm. On January 31, 1985, an attorney in the firm dictated an entry of appearance and a request for extension of time to plead. Appellant asserts that, upon the documents being signed by the lawyer, a secretary mailed them to the insurance company. Neither the clerk of the circuit court nor respondent's attorney received appellant's entry of appearance and request for an extension of time to plead.

The trial court entered an interlocutory judgment of default against appellant on February 28, 1985. On March 11, 1985, the trial court entered a final judgment by default in the amount of $1,500,000. Further facts will be adduced concerning the circumstances occasioning the default judgment as they become warranted by our discussion of the issues.

On April 22, 1985, respondent's attorney informed appellant's attorney that a final judgment had been entered. Appellant filed on May 3, 1985, two motions to set aside the default judgment. The trial court overruled appellant's motion to set aside the judgment for irregularity and sustained appellant's motion to set aside the default judgment on equitable grounds pursuant to Rule 75.01. The court of appeals reversed the trial court's order setting aside the judgment on equitable grounds and affirmed the order denying the motion to set aside the judgment for irregularity.

This Court in *Sprung I* decided the motion to set aside the judgment for irregularity was properly denied. Further, that the cause should be remanded to the trial court with directions to treat appellant's motion to set aside the final default judgment as an independent suit in equity. The Court ruled the trial court lacked jurisdiction to set aside the judgment through the exercise of its discretionary powers conferred by *Rule 75.01*, where the thirty days provided by *Rule 75.01* had expired prior to the filing of appellant's motion; instead, an independent petition in equity was required. *Sprung v. Negwer Materials Inc.,* 727 S.W.2d 883, 886 (Mo. banc 1987). Upon remand, and following the evidentiary hearing, the trial court entered an order in which it overruled appellant's petition in equity to set aside the judgment. It is from this order that appellant appeals.

At the outset, the Court recognizes the appropriate standard of review. The trial court's decree is to be sustained unless there is no substantial evidence to support

---

1. This Court treats points one and two of appellant's brief as presenting a single issue.

it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). Further, as noted in *Sprung I*, that, as appellant's motion is to be accorded the status of a petition, "[Appellant] is required not only to plead its cause, but also to prove it." *Sprung*, 727 S.W.2d at 889.

█ In its first point, appellant claims the trial court erred in refusing to set aside the default judgment on equitable grounds. In order for one to prevail in setting aside a default judgment on equitable grounds, he must show a meritorious defense, good reason or excuse for the default and that no injustice will accrue to the party who obtained the default judgment as a result of setting aside the judgment. *Sprung*, 727 S.W.2d at 889.

Appellant's principal argument is that the trial court used the wrong standard for determining whether appellant had good reason or excuse for the default. Appellant maintains that a party who seeks to set aside a default judgment need only show "reasonable diligence or excuse for the default" citing *Whitledge v. Anderson Air Activities, Inc.*, 276 S.W.2d 114, 116 (Mo.1955). Appellant further notes amended *Rule 74.05(c)*, effective January 1, 1988, which states that "good cause includes a mistake or conduct that is not intentionally or recklessly designed to impede the judicial process." The Court in *Sprung I* unequivocally enunciated the criteria, at least in the context of an independent action in equity, for determining "good reason or excuse". Adopting the language contained in *Hamm v. Hamm*, 437 S.W.2d 449, 453 (Mo.App.1969), the court declared that "good reason or excuse" exists when the default occurs "by reason of accident, mistake, inadvertence, mischance or unavoidable circumstances *unmixed with neglect or inattention*...." (emphasis in original). *See also Patterson v. Fitzgibbon Discount Corporation*, 339 S.W.2d 301, 306 (Mo. App.1960). The opinion in *Sprung I* specifically defined the issue for the trial court's determination by stating:

[Appellant] claims that its failure to answer resulted from mistake, inadvertence, mischance, or accident. [Respondent] does not concede that [appellant's] failure to answer proceeded from 'accident, mistake, inadvertence, or unavoidable circumstances *unmixed with neglect or inattention.*' ... whether [appellant] had a good cause or excuse for its inattention is a factual matter not fully addressed in the proceedings before the trial court. Further proceedings are required.

*Sprung*, 727 S.W.2d at 890 (emphasis in original).

█ Thus, the dispositive issue is whether or not there was sufficient evidence for the trial court to conclude that appellant's conduct, be it considered accident, mistake, inadvertence, or mischance, was not unmixed with neglect or inattention.

Appellant admits that its entry of appearance and proposal for an extension of time to plead were never received by respondent's attorney or filed with the trial court. Both the original and the copy of the documents were apparently sent to appellant's insurance company. Appellant's law firm utilized an internal system to alert an attorney if an order mailed to the court was not granted. A receptionist reviewed the *Daily Record* each day to determine whether requests by the law firm for extensions of time had been granted; if the *Daily Record* did not reflect that a request had been granted within a reasonable time, the mechanism called for the attorney to be notified. However, although no entry reflecting the granting of an extension of time ever appeared in the *Daily Record*, no inquiry was made by the law firm to determine the status of the case, and no further action was taken until approximately forty-nine days after the law firm had prepared the proposed order. In addition to the preceding safeguard, the law firm also had a system whereby a printout of all court actions relating to its cases was placed daily on the desk of each attorney. The judgment in the present case was reflected on the March 15, 1985, printout.

Conduct on the part of the appellant's insurance company also contributed to the default. Both appellant's attorney and his secretary testified that copies of court documents requesting time to plead and entries of appearance were not routinely sent to the insurance company. The claims manager at the insurance company, who was charged with monitoring the file in the present case, testified that she had not seen a yellow original court memorandum requesting time to plead before she received the one in the present case. She acknowledged that it would have been apparent from a cursory examination of the documents she received from the law firm that at least some of them were intended for the court. Nonetheless, the claims manager placed the documents in the insurance company's file and advised no one. These facts indicate that the default judgment was the result of possible neglect and inattention by appellant's law firm and in particular the insurance company.

Much authority supports the denial of relief when a default judgment is the result of mishandling of documents. In *Jones v. Chrysler Corp.*, 731 S.W.2d 422 (Mo.App. 1987), which was decided after *Sprung I*, the court states, "[M]isrouting of papers within an organization does not constitute good cause for default nor does it show excusable neglect." *Id.* at 427. In *Jones*, a secretary for the defendant inadvertently delayed sending a letter, timely dictated, to the defendant's law firm until after a default had been entered; the court refused to set aside the judgment. *Id.* at 425. Further, where the default is caused by the mishandling of documents by defendant's legal department, *Hughes v. Christian*, 586 S.W.2d 788, 792 (Mo.App.1979), or by the defendant's insurance company, *Luce v. Anglin*, 535 S.W.2d 504, 507 (Mo.App. 1976), the trial court's denial of relief to the defaulting party has been upheld. As noted in *Barney v. Suggs*, 688 S.W.2d 356, 362 (Mo. banc 1985) (Welliver, J., dissenting):

Default judgments are the result of either the intentional omission or negli-

gence of clients or the omission or negligence of attorneys, or both.

To this observation, insurance carriers should be added.

The law is well-settled that the neglect of a defendant's attorney or his insurer which results in a default judgment is imputable to the defendant. *Ward v. Cook United, Inc.*, 521 S.W.2d 461, 472 (Mo.App.1975). *See also Luce*, 535 S.W.2d at 508. Appellant places much reliance on the decision in *Whitledge v. Anderson Air Activities*, 276 S.W.2d at 114. The Court in *Whitledge* reaffirmed the general rule that negligence by an attorney in permitting a default judgment is imputable to the client. *Id.* at 116. However, the decision states, "[I]t does not necessarily follow that the rule is applicable to a case where defendant has retained counsel, and counsel abandons the defense of the case without notice to his client-defendant...." The holding in *Whitledge* has been consistently restricted to cases in which an attorney abandons his client. *See Rucker v. Thrower*, 559 S.W.2d 40, 41–42 (Mo.App.1977). The present case involves no claim or suggestion of abandonment.

A lawyer is charged during the progress of a cause with the duty, and in fact presumed, to know what is going on in his case. *Vaughn v. Ripley*, 446 S.W.2d 475, 480 (Mo.App.1969). He must vigilantly follow the progress of a case in which he is involved. *Id. See also Dodge v. Safe-Guard Sales, Inc.*, 356 S.W.2d 101 (Mo. App.1962). And, although the law favors a trial on the merits, such a generalization must be carefully applied to the facts of each case in the interest of justice; for, the law defends with equal vigor the integrity of the legal process and procedural rules and, thus, does not sanction the disregard thereof. *Luce*, 535 S.W.2d at 507. This point is denied.[2]

■ In its second point, appellant claims the failure of respondent's attorney to advise appellant's attorney that a default judgment had been entered until after its

---

**2.** Because appellant has failed to show good cause or excuse for the default, the Court need not decide whether the trial court erred in de-

termining that respondent would sustain no injustice as a result of delay were the judgment to be set aside.

entry provides a basis for setting aside the judgment. It is undisputed that respondent's attorney was unaware that appellant was represented by counsel or intended to defend the claim until fourteen days after final judgment had been entered. The judgment was entered on March 11, 1985. Respondent received appellant's answer on March 23 or 25, 1985, and requests for discovery on March 29, 1985. Respondent's attorney did not contact appellant's attorney until over thirty days after the judgment was entered. There is no contention that the conduct of appellant's attorney had any bearing on the entry of the default judgment itself.

In rejecting a contention that a plaintiff should notify a defaulting defendant after obtaining an interlocutory judgment of default, this Court in *Barney v. Suggs*, 688 S.W.2d at 359–60 stated:

> The procedure plaintiff utilized followed our rules, the statutes, and decisional law. . . .
>
> \* \* \* \* \* \*
>
> . . . [D]efendant was personally served with summons and petition and was put on notice of every stage of the proceeding (citations omitted).
>
> \* \* \* \* \* \*
>
> Defendant negligently disregarded legal process. Once he was validly served he was charged with notice and in court for all subsequent proceedings. Plaintiff proceeded properly under the rules. Defendant ignored them. If judgments are properly rendered they should not be disturbed by loose interpretations of cases and newly created and imposed rules. Dereliction by a defendant should not be so rewarded. No additional notice was required under the law.

In *Friedman v. The Caring Group, Inc.*, 750 S.W.2d 102, 103–04 (Mo.App.1988), the issue of the conduct of a plaintiff's attorney as to the entry of a default judgment was squarely before the appellate court.[3] The court refused to hold that the failure

of plaintiff's attorney to notify defendant's attorney, who had entered his appearance in the case but not filed an answer, that plaintiff's attorney intended to take a default judgment provided a basis for setting aside the judgment. In the present case, respondent's attorney did not know that appellant was represented by an attorney until after the default judgment was entered. The Court concludes plaintiff's attorney had no duty to inform the defendant or its attorney that a judgment had been entered.

■ In its third point, appellant claims that imputing the conduct of appellant's attorney and insurer to appellant denied appellant due process of law. The United States Supreme Court holds that it is not unjust for a client to be bound by the acts of his attorney. *Link v. Wabash Railroad Co.*, 370 U.S. 626, 634, 82 S.Ct. 1386, 1390, 8 L.Ed.2d 734 (1962). We discern no rationale for distinguishing between an attorney and an insurance company in this context. This point is denied.

■ In its fourth point, appellant claims that respondent's petition does not state a cause of action. In remanding the present case, *Sprung I* did not direct or suggest that the trial court consider this issue, although the issue was before the court, thus implicitly rejecting the claim. This Court will nonetheless consider whether the petition states a cause of action.

Initially, this Court notes the sufficiency of a petition may be raised at any stage of a proceeding, including on appeal after judgment. *Sumpter v. J.E. Sieben Construction Co.*, 492 S.W.2d 150, 153 (Mo. App.1973).

But when the attack on the sufficiency of the petition is made for the first time on appeal, the pleading will be held good unless it it [sic] wholly fails to state a cause of action, and in this determination, the petition will be given its fullest intendment as a claim for relief. *Elly-*

---

**3.** This issue was presented to the court in the briefs filed in that case. *See Lemmon v. Continental Casualty Co.*, 350 Mo. 1107, 169 S.W.2d 920, 926 (Mo.1943) (The Court took judicial notice of its own records in order to set forth facts not contained within opinions of cases to which it looked for guidance.)

son et ux v. Missouri Power & Light Co., Mo.App., 59 S.W.2d 714, 717. A petition will be found sufficient after judgment if, after allowing those reasonable inferences and matters necessarily implied from the facts stated, there [are] sufficient [allegations] to advise the defendant with reasonable certainty as to the cause of action it is called upon to meet and bar another action for the same subject-matter. Barber v. Allright Kansas City, Inc., Mo.App., 472 S.W.2d 42, 44.

Sumpter, 492 S.W.2d at 153.

■ Applying these principles to respondent's petition, the Court finds that the petition states a valid claim for damages which were the result of appellant's negligence. The petition alleges by clear implication that appellant had a duty to provide a reasonably safe cart. It further states that appellant breached this duty by supplying a cart which was not reasonably safe. Specifically, the petition alleges that the wheels on the cart were in a poor state of repair and not safe when used on uneven ground. The petition further states that the cart, as rented, was not safe for the use intended in that it could not hold a load of drywall without tipping over. The petition concludes that as a proximate result of the breach the respondent was damaged. All the elements of negligence—duty, breach, proximate cause and damage—are sufficiently stated, American Mortgage Investment Co. v. Hardin–Stockton Corp., 671 S.W.2d 283, 292–93 (Mo.App.1984), to advise appellant as to the cause of action and to bar another action on the same subject matter. Sumpter, 492 S.W.2d at 153.

The respondent chose to base his claim against appellant upon a general negligence theory. Appellant's assertion that the petition states a cause of action for negligently furnishing a dangerous instrumentality is without merit. The term "dangerous" or "dangerous condition" does not appear in the petition. Accordingly, appellant's reliance on Ridenhour v. Colson Caster Corp., 687 S.W.2d 938 (Mo.App. 1985) is misplaced. Ridenhour was a

wrongful death action involving a gratuitous bailment; the present action involves a non-gratuitous bailment. This point is denied.

The judgment of the trial court is affirmed.

COVINGTON, J., concurs in separate opinion filed.

RENDLEN, J., concurs in separate opinion filed and concurs in separate concurring opinion of COVINGTON, J.

HIGGINS, J., concurs and concurs in separate concurring opinion of COVINGTON, J.

ROBERTSON, J., dissents in separate opinion filed.

BLACKMAR, C.J., dissents in separate opinion filed and concurs in separate dissenting opinion of ROBERTSON, J.

WELLIVER, J., dissents in separate opinion filed and concurs in separate dissenting opinions of BLACKMAR, C.J., and ROBERTSON, J.

COVINGTON, Judge, concurring.

Although one is naturally inclined to be sympathetic to permitting relief from the judgment in this case, to characterize the attorney's conduct as excusable neglect or mistake unmixed with neglect ignores settled precedent and threatens to upset the stability of the Court's final judgment rule. Litigation must end and parties to litigation must have an ability finally to conclude a matter however much decisions on the merits of a case are preferred.

It makes little sense to try to define in a vacuum such subjective terms as "mistake," "inadvertence," "mistake unmixed with neglect." These words have meaning only in a specific factual context. The most that the Court could do, therefore, is to decide whether sending a request for an extension of time to plead to a client instead of the court is a mistake unmixed with neglect. Prior case law seems already to have resolved that issue; any neglect on the part of the lawyer will prevent vacating

the default judgment except where the attorney has completely abandoned the client.

Since the hearing after remand of this case the Court has adopted a new default judgment rule, *Rule 74.05*, which contains a more liberal approach to setting aside a default judgment when the motion to do so is made within one year. If the problems in *Sprung I*, 727 S.W.2d 883 (Mo. banc 1987), and *Barney v. Suggs*, 688 S.W.2d 356 (Mo. banc 1985), could have been resolved by a petition in equity, there would have been no need to adopt a new default judgment rule. It would be a distortion of precedent now to say that these problems could all along have been resolved by a separate petition in equity. That was not the teaching of *Suggs*.

The more serious problem, however, is that this case will be precedent for other cases—those filed as separate petitions in equity as well as those filed under *Rule 74.06*, which permits a final judgment to be set aside for mistake, inadvertence, surprise, or excusable neglect. Neither a petition in equity nor a *Rule 74.06* proceeding is limited to default cases. Each applies equally to cases decided on the merits. A liberal interpretation of "excusable neglect" or "mistake unmixed with neglect" will undermine both default judgments and judgments in cases decided on the merits. The more liberal approach of *Rule 74.05* may be appropriate for defaults but not for cases decided on the merits. Notably, the more liberal approach is not applied to defaults after one year, and, notably, there are no time limitations on the petition in equity except for laches.

I concur.

## RENDLEN, Judge, concurring.

At the outset, we should be mindful that ours is an adversary system and it is in this context that we evaluate the case *sub judice*.

When, during the course of this litigation, respondent's attorney received information indicating appellant was represented by counsel, he promptly communicated this fact to his client as required by Rule 4, Rules of Professional Conduct, where it is stated in the preamble:

> In all professional functions a lawyer should be competent, prompt and diligent. A lawyer should maintain communication with a client concerning the representation.

It was the attorney's responsibility as an *advisor* of his client in our adversary system to do what he did:

> As a representative of clients, a lawyer performs various functions. As *advisor*, a lawyer provides a client with an informed understanding of the client's legal rights and obligations and explains their practical implications.

*Id.* (Emphasis added.)

He was, of course, more than an advisor—he was an advocate:

> As *advocate*, a lawyer zealously asserts the client's position under the rules of the *adversary system*.

*Id.* (Emphasis added.)

After communicating with the client and explaining the situation in explicit terms, they shared the decision as to the course of action to follow, all consistent with the provisions of Rule 1.2 of Rule 4 which indicates that, except in certain specified instances, an attorney shall abide by the client's decisions concerning the objectives of representation. Though in the case at bar we need not decide whether he was obligated absolutely to follow the client's direction, it is clear that plaintiff's counsel made a good faith, albeit difficult, decision which we cannot say was unethical. Assuming arguendo respondent's counsel had chosen to disregard his client's direction and the judgment had been vacated at his behest, or as a result of his conduct, clearly he would risk a charge of failing to comply with an obligation imposed by the Rules of Professional Conduct, to say nothing of malpractice claims by his client that could flow from the formidable choice he was required to make.

For these reasons too, I concur in the majority opinion of the Court.

ROBERTSON, Judge, dissenting.

A fundamental tension exists in the law relating to default judgments. The law favors resolution of conflicts; it also seeks after justice. It is from the failure of the law to do justice in every circumstance that equity has emerged. From the fourth century B.C., the words of the philosopher describe equity's purpose. "For that which is equitable seems to be just, and equity is justice that goes beyond the written law." Aristotle, *Rhetoric*, 1374 Loeb Classical Library (1935).

In 1985, this Court decided *Barney v. Suggs*, 688 S.W.2d 356 (Mo. banc 1985). Prompted by that decision, which demonstrated that "Missouri courts have overemphasized the importance of efficiency and finality and have demonstrated an increasing disregard for the importance of the judicial system's mission to seek the truth," Professor Nanette K. Laughrey authored two articles, which led to the reform of Rule 74 and the adoption of Rule 74.06 relating to default judgments. Laughrey, *Default Judgments in Missouri*, 50 Mo.L. Rev. 841, 844 (1985) (Laughrey I), and Laughrey, *Balancing Finality, Efficiency, and Truth: A Proposed Reform of the Missouri Default Judgment Provisions*, 51 Mo.L.Rev. 63 (1986) (Laughrey II).

In this case, the circuit judge found that defendant's failure to answer in a timely fashion was the product of mistake. Rule 74.06(b) does not employ the language found in the cases, "unmixed with neglect or inattention" and permits the court to relieve a party of a default judgment entered under these circumstances. Under the new Rule 74.06(b), defendant in this case would be entitled to have the default judgment set aside upon motion averring "mistake, inadvertence, surprise, or excusable neglect" filed within one year after the entry of the judgment. See Rule 74.06(c).

I do not argue however that Rule 74.06(b) controls this case; it had neither been adopted nor become effective at the time the circuit court issued its decision. Nevertheless, two considerations militate in favor of setting aside the default judgment in this case.

## I.

First, case law prior to *Suggs* is consistent with Rule 74.06(b) in permitting a court sitting in equity to set aside a final default judgment on the basis of the defendant's mistake provided that that mistake is not the product of neglect or inattention. Neither "neglect" nor "inattention" have been defined in the context of default judgments. As the discussion which follows shows, for purposes of suits in equity to set aside default judgments, neglect is not simply a careless act as the majority assumes; it is inattention. The majority's conclusion, therefore, proceeds from a failure to understand clearly the test upon which it relies to decide the case.

*Sprung v. Negwer Materials, Inc.*, 727 S.W.2d 883 (Mo. banc 1987) (*Sprung I*), held that the defendant's motion to set aside the default judgment established equitable grounds for relief. The case came to this Court after the circuit judge set aside the default judgment "on equitable grounds" and the Court of Appeals, Eastern District, reversed. The issues before the Court were limited in *Sprung I* to "the jurisdiction of the circuit court to set aside the default judgment on equitable grounds and the propriety of the procedures employed by the circuit court in setting the default judgment aside." *Id.* at 884. The Court's mandate remanded the case with directions to the circuit court to treat that motion as a petition in equity and to proceed on that basis. It is improper to read the Court's holding in *Sprung I* any more broadly than that mandate.

On remand, the trial court found that the attorney for defendant prepared an entry of appearance and a proposed order extending the time in which to plead within three days of his receipt of the summons and petition from the defendant and within twenty days of service on defendant. Originals and copies of these documents were sent to the defendant's insurance carrier along with the original of the attorney's letter to the circuit clerk requesting that the proposed order be presented to the judge for signature. The circuit judge also

found that defendant filed its answer on March 23, 1985. The circuit judge found further that defendant's attorney mailed a notice to take deposition and a certificate of mailing interrogatories March 29, 1985. All of this took place more than three weeks *before* plaintiff's counsel informed defendant's counsel that he had obtained a default judgment, which was, by then, final.

The trial court characterized three events—the mismailing of the original entry of appearance and time to plead memorandum, the failure of an employee of the insurance company to realize the significance of the receipt of the original entry and memorandum, and the failure of defendant's attorney's receptionist to notify the attorney of the report noting the default in the legal newspaper—as constituting "neglect and inattention...." The majority seizes this conclusion and, without burdening itself with an analysis of the meaning of "neglect" or "inattention" within an equity context, affirms the trial court.

*Hamm v. Hamm*, 437 S.W.2d 449, 453 (Mo.App.1969), cited in *Sprung I* and upon which the majority relies, tells us that "[e]quity will relieve against a judgment for extrinsic fraud, accident and mistake [citation omitted], and where a defendant is denied the occasion to present a meritorious defense by reason of accident, mistake, inadvertence, mischance or unavoidable circumstances *unmixed with neglect or inattention,*" a court of equity will vacate a default judgment and give the injured party an opportunity to present his defense to the trier of the facts. (Emphasis in original.) *Hamm* cites *Patterson v. Fitzgibbon Discount Corp.*, 339 S.W.2d 301, 306 (Mo. App.1960), as authority for the quoted statement without further analysis. *Patterson* in turn cites *Cherry v. Wertheim*, 25 S.W.2d 118, 121 (Mo.App.1930), likewise without analysis. *Cherry* cites *Jackson v. Chestnut*, 151 Mo.App. 275, 131 S.W. 747, 749 (1910), and *McElvain v. Maloney*, 186 S.W. 745, 749 (Mo.App.1916). *Jackson* states: "That an accident, preventing defense, unmixed with any fault or negligence of a party litigant, will sustain a bill of equity for relief against a judgment by default and which has become final by adjournment of the term, is well established." 131 S.W. at 748. *Jackson* also quotes 2 Story Equity Jurisprudence, § 885. "In all cases when by accident, mistake, or fraud or otherwise a party has an unfair advantage in proceedings in a court of law, which must necessarily make the court an instrument of injustice, and it is, therefore, against conscience that he should use that advantage, a court of equity will interfere and restrain him from using the advantage."

*McElvain* cites *Smoot v. Judd,* 161 Mo. 673, 61 S.W. 854, 857 (1901), as authority for the "unmixed with neglect or inattention" language. *Smoot* quotes Pomeroy's *Equity Jurisprudence* § 836.

"Where the defendant in an action at law has a good defense on the merits, which he is prevented by accident from setting up or making available, *without any negligence or inattention on his part,* and a judgment is rendered against him, equity will exercise its jurisdiction on his behalf by enjoining further proceedings to enforce the judgment, or by setting it aside, so that a trial may be had on the merits." [citation to Pomeroy omitted]. And what is there said of accident is repeated by the same author concerning mistake and fraud. (Emphasis added.)

At last we find the origin of the language found in *Hamm.* The phrase "unmixed with neglect or inattention" is a paraphrase of § 836 of Pomeroy's treatise on Equity Jurisprudence. I do not find a Missouri case which defines "neglect" or "inattention." Undoubtedly, the courts felt no need to define the phrase because Pomeroy's treatise does so. Pomeroy states:

accident is an unexpected occurrence *external* to the party affected by it.... Mistake, on the other hand, is *internal;* it is a mental condition, a conception, a conviction on the understanding,—erroneous, indeed, but none the less a conviction,—which influences the will and leads to some outward physical manifestation.... *It is also distinguished from that inattention or absence of thought which are inherent in negligence....*

Mistake, therefore, within the meaning of equity, and as the occasion of jurisdiction, is an erroneous mental condition, conception, or conviction, induced by ignorance, misapprehension, or misunderstanding of the truth, but without negligence, and resulting in some act or omission done or suffered erroneously by one or both the parties to a transaction, but without its erroneous character being intended or known at the time.

Pomeroy, *Equity Jurisprudence* § 839 (emphasis added). For Pomeroy, neglect and inattention are essentially synonymous; mistake results from *doing* an act erroneously not from the failure to act which constitutes neglect or inattention. In equity, a mistake is not simply a careless act for purposes of setting aside default judgments; it is an act thought correct when done, but which is ultimately shown to be erroneous.

In this case, the trial judge's findings of fact, to which we generally accord great deference, show that defendant's attorney's action and the default judgment that followed were not the product of "inattention or neglect", as Pomeroy and appellate decisions intend the phrase to be employed, but of a belief, though erroneous, that the answer had been filed. This is exactly the sort of mistake for which equity historically provides relief in matters relating to default judgments.

## II.

Second, the policy considerations favoring finality are three: "(1) there is no assurance that relitigation will produce any different result; (2) judicial economy demands that there be an end to litigation ...; (3) finality produces the certainty of the law that is necessary to promote confidence in the judicial system." Laughrey II at 71. Of the three policy considerations, "only certainty seems compelling in the context of default judgments. 'A default judgment must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party.' [*H.F. Livermore Corp. v. Aktiengesellschaft Gebruder*

*Loepfe*, 432 F.2d 689, 691 (D.C.Cir.1970) ]." Laughrey II at 73. Rule 74.06(b), if applied to this case, would permit the default judgment to be set aside.

The new rule recognizes that a balance must be cast between finality and the search for justice. In my view, the new rule is entirely consistent with precedent properly understood and the rule attempts to restore justice to the law's policy regarding default judgments. If justice is the focus of our system of laws, and particularly of a system which acknowledges the need for equity to correct the injustices of harsh applications of rules, the result in this case ought to be the product of that concern for justice, not a mechanical and punitive application of now-abandoned rules and misinterpretation of precedent. Equity demands justice, not incantation.

I would reverse the trial court's decision and remand this case for a trial on the merits. I respectfully dissent.

BLACKMAR, Chief Justice, dissenting.

The principal opinion, not composed in this Court, is faulty in at least three principal respects, as follows: (1) it departs from established principles of equity jurisprudence, citing cases which are clearly distinguishable and ignoring pertinent authority so as to deny relief from a judgment which, at the very least, became final only as the result of mutual mistake; (2) it sanctions the dilution of professional standards by condoning a lawyer's conduct in deliberately allowing his opponent to proceed under mistaken assumptions, correcting the assumptions only after the passage of a relatively short time had given him a decided advantage; and (3) it reaches a manifestly unjust result, not under the compulsion of precedent but in the face of authority, upholding a very large judgment without trial. I would vacate the judgment and remand with directions to set aside the default judgment and allow the trial to proceed.

### 1. *The Facts*

The facts detailed in the principal opinion are incomplete. The facts are uncontra-

dicted, and so *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976), presents no bar to our full review.

The defendant was served on January 11, 1985. The defendant's counsel, assigned by its insurance company, received the summons and petition on January 31, 1985. He immediately took steps to obtain time to file an answer, preparing a request for extension to March 21, 1985, but, through the clerical mistake of the office force, the documents were mailed to the insurance company which routinely requested copies of court documents, and not to the court or to plaintiff's counsel. This was a single act of negligence, properly attributable to the client. It is possible that the mistake could have been discovered if the insurance company had carefully examined the papers mailed to it, or if the defendant's attorney's office staff had noted entries in the Daily Record, but the essential problem springs from the initial clerical mistake.

Plaintiff's counsel quite properly filed a motion for judgment by default on February 28, 1985, when he received no response to the petition. Nothing indicates that he had any idea who represented the defendant at this time. He then obtained a setting, put on evidence, and was granted a default judgment in the amount of $1,500,-000 on March 11, 1985. The judgment so obtained was subject to being set aside on motion filed on or before April 10, 1985, in the discretion of the trial court. *Vandergriff v. Missouri Pacific R.R.*, 769 S.W.2d 99, 101 (Mo. banc 1989).

Defendant's counsel did not neglect his case. He prepared and filed an answer on March 23, 1985, mailing a copy to plaintiff's counsel. He then prepared written interrogatories and a notice to take depositions on March 30, 1985, mailing copies to plaintiff's counsel.

The response of plaintiff's counsel is best described in his own words, as follows:

I called him [Sprung, plaintiff] to tell him that within the 30 day period there had been an answer filed and he asked me what that meant and I said, "I don't really know what they mean by this, but there is an attorney now who thinks that it's still a lawsuit," and that's what I told him.

Q So it appeared to you that Mr. Ely was filing an answer and had no realization that there had already been a default judgment?

A That's correct.

Q And you passed that information on to Mr. Sprung?

A Right.

\* \* \* \* \* \*

Kortenhof and Ely ... may have been responsible for the default ... But I said you know, "I could talk to him about it and find out if they're involved. If they're involved, they'll file a motion to set it aside." I said, "If the insurance company's involved and they're not involved, they're still going to file a motion to set it aside," and that was basically it and he said, "Well, what will that mean to me?" I said, "There's a chance you can lose your verdict (sic)," and he said, "Don't do it."

Plaintiff's counsel further testified:

So after the 30 day period I waited until 10 more days, which would be the normal appeal time and sometime after that, maybe the 41st, 42nd, depending on what day of the week it was, I don't recall, I called Ben on the phone and said, "Ben, I'd like to come down and see you," and he said, "Okay." And I came on downstairs and talked to him.

\* \* \* \* \* \*

*Sprung v. Negwer Materials, Inc.*, 727 S.W.2d 883 (Mo. banc 1987) (*Sprung* I), held that these facts stated a claim for equitable relief. We must now decide whether the trial court properly applied established principles of equity jurisprudence to the undisputed facts. For the reasons which follow, I submit that it did not.

### 2. *"Mistake" vs. "Neglect or Inattention"*

Judge Robertson expounds the sense of *Sprung* I accurately, whereas the principal opinion's analysis of its holding is faulty. There was no purpose of circumscribing

the court's historic equitable power. That defendant's counsel is guilty of "mistake" rather than "inattention or neglect" is shown by his proceeding with the other pretrial steps in the case. Decades of equity cases support the granting of relief under the undisputed facts of this case. The principal opinion simply ignores the strong line of authority.

Judge Covington suggests,

[A]ny neglect on the part of the lawyer will prevent vacating the default judgment except where the attorney has completely abandoned his client.

This suggestion is flatly contrary to our opinion in *Whitledge v. Anderson Air Activities*, 276 S.W.2d 114 (Mo.1955), which would control the court of appeals cases cited in the principal opinion, to the extent that there is any conflict. That case involved confusion as to whether the defaulting defendant had insurance coverage. The trial judge expressly found as follows:

Defendant is guilty of negligence and inexcusable neglect in failing to appear or plead in this case prior to January 21st, 1954.

We nevertheless found an abuse of discretion when the trial court refused to set the judgment aside on motion. That case, which appears to be the latest pertinent word from this Court, furnishes ample authority for setting aside the default in this case. The majority should frankly say that it is now overruled.

The principal opinion tries to distinguish that case on the basis that it involves "abandonment" rather than "mistake". The attempted distinction is not at all persuasive, on the law and the facts. Can it be the law that a client may have relief if his attorney is greatly at fault, but not if there is but a single mistake? The logic of such a holding escapes me. I cannot see any possible basis for distinguishing *Whitledge*. The opinion shows that the defendant's counsel there performed essentially as defendant's counsel in this case.

The principal opinion cites in qualification of *Whitledge* only *Rucker v. Thrower*, 559 S.W.2d 40, 41–42 (Mo.App.1977), in which a defendant sought to avoid a default judgment when the plaintiff sued out an execution. The case is totally distinguishable because there the defendant had previously moved to set aside the default judgment and then took, but failed to perfect, an appeal from the denial. *Res judicata* clearly barred collateral attack for relief which could have been obtained on the abandoned appeal.

*Sprung* I, in holding that the defendant's motion stated a claim in equity, necessarily invites us to examine respected authorities such as Pomeroy's Equity Jurisprudence, originally published in 1881. To the passages relied on by Judge Robertson, I would add the following (5th Ed., 1941, Symons, § 856b):

Mistake Must be Free from Culpable Negligence.—As a second requisite, it has sometimes been said in very general terms that a mistake resulting from the complaining party's own negligence will never be relieved. This proposition is not sustained by the authorities. It would be more accurate to say that where the mistake is wholly caused by the want of that care and diligence in the transaction which should be used by every person of reasonable prudence, and the absence of which would be a violation of legal duty, a court of equity will not interpose its relief; but even with this more guarded mode of statement, each instance of negligence must depend to a great extent upon its own circumstances. It is not every negligence that will stay the hand of the court....

Missouri authorities are consistent. *Moreland v. State Farm Fire and Casualty Co.*, 662 S.W.2d 556 (Mo.App.1983); *Cameron State Bank v. Sloan*, 559 S.W.2d 564 (Mo.App.1977); *Berry v. Continental Life Insurance Co.*, 224 Mo.App. 1207, 33 S.W.2d 1016 (1931); *New York Life Insurance Co. v. Gilbert*, 215 Mo.App. 201, 256 S.W. 148 (1923).

Judge Covington's concurrence, now speaking for three judges, fails to give attention to pertinent equitable authorities. It has been suggested that the rules for equitable relief from judgments differ from the principles governing contracts and

deeds. That this is not so is shown by Restatement (Second) of Judgments § 67, comment b (1982):

>    b. *Excusable neglect.* The first requirement is that the initial failure to respond to notice of the action be plausibly explained. This requirement is commonly referred to as "excusable neglect," although that seems a misnomer because excusing the neglect depends not only on the circumstances of the initial failure to respond but also on the other conditions stated in this Section. At any rate, what must be shown is that the failure to respond was attributable to mishap and not indifference or deliberate disregard of the notice....

I cannot envisage a quotation which is more appropriate to describe the situation in this case.

Also consistent with the authorities just cited, and supportive of the proposition that grounds for equitable relief from judgments are similar to those involving contracts and deeds, is *Overton v. Overton,* 327 Mo. 530, 37 S.W.2d 565 (1931). There a man had deeded 12 acres of land to his son before he died, out of a larger tract which he owned. On his subsequent death his heirs filed a partition suit in which the son was named as a defendant because he had a claim against the estate and declined to join as plaintiff. The attorney who prepared the petition included the son's 12 acres in the land description and the son allowed judgment in partition to be entered, assuming that the plaintiffs' attorney had described the land correctly. Final judgment was entered directing partition of property including the 12 acres. The 12 acres were sold and conveyed to another party. We held that the son was entitled to equitable relief against the final judgment in spite of his negligence in not checking the description. The opinion stated that this negligence was "superinduced" by the plaintiffs' attorney.

It is plain from the cases cited that the mistake of defendant's counsel does not bar the relief now sought, if it is otherwise available in equity. Were the law otherwise, *Sprung* I would have been an exercise in futility, and should have simply sustained the default judgment, as there suggested by Judge Rendlen.

### 3. *The Effect of Plaintiff's Counsel's Conduct*

I can understand concern about the finality of judgments if any judgment could be opened up without limit simply on a finding of mistake or inadvertence. Contrary to the suggestion in the concurrence, this record presents no such danger. Equity has an answer for this concern in the requirement that mistake, in order to justify equitable relief, must be mutual. The cases consistently hold that the mistake of one party is mutual if the opposing party knows of the mistake.

Plaintiff's counsel's own testimony shows that he was perfectly well aware of what had happened when he received communications from defendant's counsel on March 23 and March 29, 1985. He knew that counsel was proceeding with the defense of the case, on the mistaken assumption that it was properly pending, and that the extension papers must not have reached him or the courthouse. He knew that if defense counsel were alerted, the default judgment would probably be set aside as of course. *Vandergriff, supra.* He also knew that if the situation remained the same until April 10 had passed, the default would be infinitely more difficult to set aside. Knowing these circumstances, he deliberately refrained from answering his mail, or even from acknowledging the communication. His conduct should shock all right-thinking lawyers.

The Court should not hesitate to say that this kind of conduct is unacceptable in our profession. The processing of civil litigation requires that lawyers deal with each other in accordance with the highest standards of trust and candor. The two communications called for a response within a reasonable time, which in the setting of this case means "without delay." Perhaps counsel did not have a duty to tell his opponent in so many words that he had taken a default, but at the very least he could dictate a letter saying, "we have no

record of your firm's involvement in the case."

I accept the proposition that a lawyer has a duty to advance his client's interest by all honorable means, and would reject any suggestion that "professional courtesy" should prevail over the lawyer's duty to his client. I would like to be remembered as a lawyer who went all out for his clients. But I would stop short of taking advantage of a mistake known to me. Nor would I sanction a situation in which the Court permits other lawyers to get away with conduct which I consider the legal equivalent of fraud. *See Columbian National Life Insurance Co. v. Black,* 35 F.2d 571, 574 (10th Cir.1929). This Court, in the last analysis, sets the standards which Missouri lawyers must observe. It should not allow this plaintiff and his attorney to profit from deceptive conduct or deceptive silence.

In one of the earliest treatises on legal ethics the late Judge George Sharswood, sometime Chief Justice of Pennsylvania, speaks as follows:

Let [the reader] shun most carefully the reputation of a sharp practitioner. Let him be liberal to the slips and oversights of his opponent whenever he can do so, and in plain cases not shelter himself behind the instructions of his client. The client has no right to require him to be illiberal—and he should throw up his brief sooner than do what revolts against his own sense of what is demanded by honor and propriety.

Sharswood, An Essay on Professional Ethics, 73–74 (6th Ed.1930).

We should require lawyers to comply with this standard, not only as a matter of professional courtesy, but as a positive rule of law. Here there was a duty to reply to the correspondence, and, since there was a critical limit, to make some sort of response within that time limit. Lying in wait until the response was stripped of its meaning should not be countenanced.

But we do not have to argue on the basis of special rules for the legal profession. I do not really believe that plaintiff's counsel's conduct would be acceptable in the world of commerce. *See* Appendix. In similar situations the courts have recognized equitable remedies. In the traditional casebook exemplar, *Columbian National Life Insurance Co. v. Black, supra,* 35 F.2d 571 at 574, the court said:

When [the insured] received the policy he either did or did not notice the error. If he did not notice it, the mistake was mutual. If he did notice it and said nothing, he was guilty of such inequitable conduct as to amount to fraud.

Here too there is conduct which a court of equity should hold to be the legal equivalent of fraud. But we do not have to characterize the conduct as fraudulent. Equity also gives relief for "mutual mistake," which includes the mistake of one party, known to the other.

The Restatement (Second) of Judgments § 67 comment c states as follows:

If the party obtaining the [default] judgment was on notice of facts indicating the neglect by the attorney or insurer, that is a factor weighing in favor of relief.

Williston on Contracts, Vol. 12 at 382 (3d Ed. (Saeger) 1970), comments:

Unilateral mistake, even apart from knowledge of the other party to the transaction of the mistake, has been held in some cases to justify relief; and it has been held with undeniable justice that mistake by one party and knowledge of the mistake by the other will justify relief as fully as mutual mistake. (Emphasis added).

And Pomeroy's Equity Jurisdiction, *supra,* § 847, puts the issue in the following language:

Whatever be the effect of a mistake pure and simple, there is no doubt that equitable relief, affirmative or defensive, will be granted when the ignorance or misapprehension of a party concerning the legal effect of a transaction in which he engages, or concerning his own legal rights which are to be affected, is induced, procured, aided, or accompanied by inequitable conduct of the other parties. It is not necessary that such ineq-

uitable conduct should be intentionally misleading, much less that it should be actual fraud; it is enough that the misconception of the law was the result of, or even aided or accompanied by, incorrect or misleading statement, or acts of the other party.....

That these propositions are applicable in Missouri is clearly shown by the cases cited in Part 2 of this opinion. A negligent mistake will not bar equitable relief.[1]

In 17 Couch, *Insurance* (2d Ed.1983) § 66:36, the author discusses the equitable remedy of reformation of insurance contracts, as follows:

Where the mistake of one party is combined with the knowledge of the other party that the first party has made a mistake, there is generally sufficient ground for reformation even though the mistake that was made was merely unilateral. In sum, the effect is to hold that when the other party proceeds with the knowledge that the first party is laboring under a mistake, his conduct is "inequitable" and therefore warrants reformation....

Neither the principal opinion nor the concurring opinion shows why these authorities are not pertinent and controlling under the undisputed facts. The information that plaintiff's counsel's conduct is immaterial in an equitable action is not supported by any authority I can find.

The principal opinion cites *Barney v. Suggs*, 688 S.W.2d 356 (Mo. banc 1985), for the proposition that an attorney has no obligation to advise the opposing party or his counsel that he has taken a default judgment. That case has absolutely no application to the present situation because there was no indication whatsoever that plaintiff's counsel knew that the defendant had retained counsel, or had any communication with or from counsel. It appears, rather, that the defendant himself misplaced the summons and the petition and failed to notify his insurance carrier. The case simply holds that no appeal could be taken from the default when no motion to vacate had been filed.[2]

Totally inapplicable is *Friedman v. The Caring Group, Inc.*, 750 S.W.2d 102 (Mo. App.1988). *Friedman* held nothing more than that the defaulting defendant was not entitled to having a default judgment set aside when he could not demonstrate a meritorious defense. *Id.* at 105. It is indeed strange that the principal opinion follows the court of appeals blindly in citing as authority a court of appeals decision which does not even analyze or discuss the issue of setting aside a default judgment based upon plaintiff's attorney's conduct. It is factitious to try to bolster case law in this manner. We must assume that the opinion discussed the matters the court considered controlling and precedentially significant.[3] The citation in the principal opinion, then, is spurious.

It is interesting to consider what plaintiff's counsel would have done if defense counsel had called him on the telephone seeking to arrange a time for depositions. I hardly think that he could properly have agreed on a date, without advising counsel that he had taken a default.[4] This example

---

1. *Moreland v. State Farm Fire and Casualty Co.*, 662 S.W.2d 556, 563 (Mo.App.1983); *Cameron State Bank v. Sloan*, 559 S.W.2d 564, 567–68 (Mo.App.1977); *Berry v. Continental Life Insurance Co.*, 224 Mo.App. 1207, 33 S.W.2d 1016, 1018 (1931); *New York Life Insurance Co. v. Gilbert*, 215 Mo.App. 201, 256 S.W. 148, 151 (1923).

2. Judge Covington's suggestion that my approach would justify the reopening of *Barney v. Suggs*, 688 S.W.2d 356 (Mo. banc 1985), is utterly unjustified. Again, the successful party would be protected because the mistake was not mutual.

3. More interestingly, the only reference in *Friedman* to the plaintiffs' attorney's conduct supports the proposition I now advocate:
Counsel for plaintiffs stated in his brief here that he extended [defendants' attorney] every reasonable "professional courtesy." *There are members of the bench and bar who can remember when that phrase would have included advance warning to a dilatory attorney adversary of intent to seek a default and immediate notice that one had been obtained.*
*Friedman, supra,* at 104 n. 1 (emphasis added).

4. Perhaps lawyers must confront their opponents face to face or by telephone instead of using the mails for routine notices. Clients of course would bear the extra cost.

differs only in degree and not in kind from the actual situation before us.

It has been suggested, unfortunately, that plaintiff's counsel was justified in doing as he did because his client might have sued him for malpractice.[5] We should certainly take this occasion to say so all can hear that communications between opposing counsel are a part of the normal practice of law, essential in the orderly handling of litigation, and that a lawyer cannot subject himself to malpractice liability by acting honorably toward his forensic opponents.

Judge Covington professes to be "sympathetic," but foresees dire consequences both as to defaults and in other cases if the rules on setting aside judgments in equity are relaxed. Equity courts over the years have anticipated such problems, but have had no trouble in applying the concepts of mutual mistake and extrinsic fraud so as to do equity to all. *See Sutter v. Easterly*, 354 Mo. 282, 189 S.W.2d 284 (1945). The writer does not cite the precedents found to be so compelling, and I cannot find them.

The conduct of plaintiff's counsel, at the very least, demonstrates a mutual mistake authorizing equitable relief.

### 4. *Equity for the Plaintiff*

The principal opinion does not reach the question whether a setting aside of the judgment is fair and equitable from the plaintiff's standpoint. The question is easily answered because the uncontradicted record shows that the plaintiff knew of his lawyer's conduct and, according to his counsel's testimony, directed it. He is thus fully chargeable with any inequity or impropriety in what his attorney has done. He is entitled to his day in court, but this connotes a trial. Default is an extraordinary procedure designed to protect and maintain the processes of the court. The

plaintiff is only an incidental beneficiary of the default. He had the opportunity for an undelayed trial following Judge Adolf's initial order. He took the first appeal, and there is no inequity in binding him by the final result of the appellate process.[6]

### 5. *Concluding Observations*

It is also important to consider the very large judgment, the relatively slight error, and the short time within which the answer was filed, and to balance these against the plaintiff's counsel's manifestly inequitable conduct.

On this point the Restatement notes:

[T]he decision involves taking account of several incommensurable factors, some relating to the particular case and others to the larger system of administered justice. The factors relating to the particular case include the magnitude and consequences of the judgment, the relative clarity with which it appears the judgment was unjust, the relative fault of the parties ..., the requirements of diligence ..., and the equities in the interests in reliance. (Emphasis added).

Restatement (Second) of Judgments § 74 comment g.

I cannot summarize better than Judge Robert E. Crist of the Missouri Court of Appeals did at an earlier stage of this case:

A default judgment taken after a defendant has negligently failed to file responsive pleadings becomes a valid, enforceable judgment absent a timely appeal and absent unusual circumstances. I believe there was an unusual circumstance in this case—plaintiff's knowledge and concealment of defendant's negligence within sufficient time to have prevented the judgment from becoming final. Plaintiff had the "last clear chance" to prevent defendant from being in default. A plaintiff should not be unjustly

---

**5.** *Sprung v. Negwer Materials, Inc.*, 727 S.W.2d 883, 893 (Mo. banc 1987) (Rendlen, J. concurring) and Judge Rendlen's concurrence in this case; unpublished opinion of Dowd, J. for the court of appeals in that case. Nor need lawyers fear that they will be subject to professional discipline if they refuse to follow instructions such as this client gave.

**6.** A court of equity should be entitled to consider some allowance to the plaintiff on account of the trouble occasioned by the defendant's mistake, such as, e.g., the cost of appearances for the interlocutory and final default judgments.

enriched by defendant's negligent failure to plead where plaintiff has actual knowledge of such negligence and has the means to avoid the finality of a default judgment. I believe the consequences to this defendant of a final, default judgment, when compared to the consequences to this plaintiff of having to prove his case, demand a trial on the merits.

It will not do to say that the balancing of the equities is for the trial court and not for this Court, first, because the facts are not in dispute, and, second, because it is our primary responsibility to formulate and to enhance standards for the legal profession.[7]

I would vacate the default judgment and remand so that the case may proceed to trial.

## APPENDIX

(1) A and B are negotiating a complicated contract, involving many provisions. Each is represented by counsel. A's counsel prepared a proposed contract whereupon B's counsel prepared a revised, signed draft as a counter offer. Several drafts were exchanged in this manner. A's counsel now submits a "final offer." All prior drafts included a paragraph in which B agreed to pay A $100,000 for certain items. No question had been raised about this paragraph. In the "final offer," however, A's counsel mistakenly included a figure of "$100.00" for "$100,000." B's counsel reports this apparent mistake to his client who instructed him, "Say nothing about this. He's signed. I'll sign the contract as it is." May B's counsel legally and ethically refrain from advising A's counsel of the mistake?

(2) Attorney A represents B bank is the trustee of a first deed of trust securing a note held by the bank. There are junior deeds of trust, but the public record does not show who holds the notes secured by the junior deeds of trust. A, at the direction of B bank, publishes proper notice of a trustee's sale, to be held Tuesday, September 12, 1989. On Wednesday, September 6, 1989, A received a letter from X, who advises him that he now owns the note secured by the second deed of trust and continues, "If you will advise me of the outstanding balance on the first deed of trust, I will make full payment." A reports this to the president of B bank, who instructs him, "Don't answer the letter until after the sale."

In his dissenting opinion in the court of appeals, Judge Karohl speaks as follows:

What of the instructions of plaintiff to plaintiff's counsel? We need not consider or decide whether such conduct alone justifies the court awarding a new trial in a separate equitable proceeding. The burden is upon defendant to prove the three elements of meritorious defense, good reason or excuse, and no injustice to plaintiff. However, plaintiff's instructions are not totally irrelevant to defendant's proof of good reason or excuse for the default. The default judgment was not a final judgment until April 10, 1985. However the trial court which entered the default judgment was entitled to the benefit of plaintiff's knowledge that a "late" answer was filed by defendant who obviously was not aware of the judgment. No client has authority to bind and no attorney is bound by any instructions of a client not to communicate with the court regarding matters which are on file with the court but which may not be actually known. It is unlikely that a trial judge, would not have promptly known that an answer was filed twelve days after the entry of a $1,500,000 default judgment in any rural circuit in this state. Without actual notice it is likely that such event, the filing of an answer after default, would not come to the attention of a judge in St. Louis City, St. Louis County, Jackson

---

**7.** I would not accept any suggestion that Rule 74.05(c), adopted after the default judgment in this case was entered, renders the present controversy unimportant. In some of our circuits cases are not reached for trial for two years. If we sanction such conduct, there are lawyers who will try to keep their opponents in ignorance for a year. Also, a case might be dismissed for procedural fault, and a knowing defendant might try to conceal the situation for a year, by disregarding inquiries or offers.

County, and perhaps Greene County. What Judge Adolf would have done, in terms of good cause, under the authority of Rule 75.01 is obvious because of the subsequent order setting aside the default judgment on equitable grounds. If there was no duty to the court by defendant's counsel then the legal system which does not favor defaults, suffers. Further default judgments will not be freely granted, unless, there is a duty to call that late filing of and answer to the attention of the court. This arises from the fact that the default was granted because it appeared the defendant ignored the court summons. Breach of the duty does not justify a new trial in an equitable proceeding but it is relevant in considering whether defendant's mistake led to a final judgment. On the present undisputed facts and findings of the trial court, the failure to inform the trial court of the answer ignored the conditions under which the default judgment was granted and the filing supports a finding of neither neglect nor inattention.

It need not be decided whether plaintiff's instructions to his counsel were mandatory under our practice. Those instructions had no application and should have had no application to the present case. There is no fact dispute that: (1) plaintiff's counsel did not inform the trial court of the answer within the thirty day period after judgment, (2) the trial court had no such knowledge within the thirty day period; and, (3) the trial court later set aside the judgment on equitable grounds. A client is not entitled to order counsel not to communicate with the court.

WELLIVER, Judge, dissenting.

I respectfully dissent from the principal opinion for the reasons stated in my dissent in *Sprung v. Negwer Materials, Inc.,* 727 S.W.2d 883, 894 (Welliver, J., concurring in part and dissenting in part). (*Sprung I*). I concur in the separate dissenting opinions of Blackmar, C.J., and Robertson, J. I disagree with the Concurring Opinion of Covington, J.

Arriving at a fair and just method for the handling of defaults has never been easy, perhaps because of the difficulty of separating the rights and the acts of the parties and their lawyers. Responding to the growing dissatisfaction of the Bar with the line of decisions strictly and technically enforcing defaults, Missouri Bar, this Court, and the Finch and Ross standing rules committees unsuccessfully struggled for ten years with trying to revise our Rule 74 relating to defaults. Nanette Laughrey's publication of her serial law review articles[1] discussing Rule 74 triggered this Court to appoint one more committee, a Special Ad Hoc Committee charged with revising Rule 74. This committee, like our prior Rules committee, was composed of the finest trial lawyers, judges and scholars in the Bar. This committee recommended that we abandon the concept embodied in our growing line of cases that any negligence of the attorney precludes the setting aside of the default, and, that in its place we adopt the concept that excusable neglect is a ground for setting aside a default. The Court, as then constituted, being the same Court that heard *Sprung I,* adopted the recommended revised rule effective January 1, 1988.

There are two ways that this Court may effectively overrule cases. The first is by an opinion so stating. The second, pursuant to the rulemaking power granted the Court by the constitution, Mo. Const. art. V, § 5, is to adopt a rule contrary to the existing case law. One is as effective as the other. It follows that by a subsequent case we may as effectively emasculate or repeal a rule. We were right in adopting revised Rule 74, and there should be consistency in the cases that follow.

It might be well to note that the problem of dealing with defaults has been as difficult for the Court as it was for our committees, our opinions in *Suggs, Sprung I,* and now *Sprung II* all coming from a court

---

1. Laughrey, Default Judgments in Missouri, 50 Mo.L.Rev. 841 (1985), and Laughrey, Balancing Finality, Efficiency, and Truth: A Proposed Reform of the Missouri Default Judgment Provisions, 51 Mo.L.Rev. 63 (1986).

divided 4 to 3. Those who have remained and who have traversed the full course of *Sprung* and the adoption of revised Rule 74, based upon prior votes appear to stand evenly divided on this case.

The revision of Rule 74 has been well received by the Bar of the state, and in my opinion, is considered by the Bar to be one of this Court's major accomplishments in the improvement of the administration of justice during the last decade.

I share Judge Covington's concern for the precedent that may be set by this case, but not for the same reason. The precedential effect which I fear is that the combination of the principal opinion and the concurring opinion which harks back to and re-embraces the "teachings" of *Suggs*, op. at 103 (Covington, J. concurring), sets us back ten years into the quagmire of defaults.

I do not find the great difficulties found by Judge Covington in dealing with the definition and application of the concept of "excusable neglect", it simply being that inadvertence or neglect which was not intended to and did not thwart the orderly administration of justice and did not deprive the other party of a full, fair and timely trial of his cause on its merits. Never in the full course of *Sprung* has it been alleged or asserted that the setting aside of this default judgment would deprive the plaintiff of a fair trial of his cause on its merits.

The real issue in this case is not for us "to decide whether sending a request for an extension of time to plead to a client instead of the Court is a mistake unmixed with neglect", op. at 102 (Covington, J. concurring). The real issue is whether we as a Court embrace the concept that excusable neglect is a ground for setting aside defaults as we said by our approval and adoption of Revised Rule 74. If we do, then courts sitting in equity should do no less.

Free of legalese and in the plainest language at my command, "the teachings" by which I believe we should be guided are; "that the law and especially equity abhors defaults"; that as lawyers and judges our primary duty and obligation is to see that all parties to litigation are accorded a fair and just trial on the merits of their causes; and, that we as judges of the highest Court of our state have a special obligation to both inspire and to hold lawyers to the highest possible standard of conduct. I would be less than honest if I did not express my concern and disappointment about the direction taken by the newly constituted Court, and, I would be shirking what I believe to be my responsibilities if I failed to alert the lawyers to the potential impact of this opinion.

The default should be vacated and a trial on the merits ordered.